19754

SEABOARD COAST LINE RAILROAD, Appellant, v.
James W. HARRELSON, Respondent
(202 S. E. (2d) 1)

*Messrs. Moore, Flowers & Doar,* of Georgetown, *for Appellant,*

*J. Reuben Long, Esq.,* of Conway, *for Respondent,*

January 10, 1974.

LITTLEJOHN, Justice:

Seaboard Coast Line Railroad commenced this condemnation proceeding pursuant to § 58-771 *et seq.* of the Code of Laws of South Carolina (1962) to obtain a right-of-way across a tract of land in Georgetown County owned by James W. Harrelson. Seaboard has appealed from a jury verdict in favor of Harrelson for $20,000.00, alleging error in the admission of certain evidence.

Prior to the condemnation, Harrelson's property, located about eight miles southeast of the city of Georgetown, contained 83.9 acres. It was bounded on the east by Penny-

royal Creek and was situate one-half mile south of State Highway 22-42, locally referred to as Pennyroyal Road. Access to this tract from Pennyroyal Road was by an unimproved county road.

The right-of-way, within which Seaboard will construct, maintain, and operate a track to service a power plant being constructed by the South Carolina Public Service Authority, contained 2.6 acres. It crossed Harrelson's property in an east-west direction and divided it into two parcels of 50 and 33 acres, approximately. It extended 1295 feet in length and varied in width from 80 to 100 feet.

Via consent order of the court, the necessity of empaneling a clerk's jury in accordance with § 58-777 was waived, and Seaboard was permitted to gain possession of the condemned area upon payment into court of $5,200.00; however, the right of either party to ask for a trial *de novo* was preserved. In due course, Harrelson served notice of his desire to have the matter so determined.

Harrelson was the only witness who testified in his behalf relative to the highest and best use of his property. He testified that up until the time of this condemnation he was excavating coquina and other salable materials from the area within the right-of-way, in the process of which he would be developing his property. He indicated that he had intended to excavate the entire creek bed, the result of which would have been a 20 to 25 acre lake which connected with Pennyroyal Creek. He further testified that this plan of development would now have to be altered because the proposed lake would be divided by the right-of-way. In his opinion, the value of the condemned area was $68,266.00, and the remainder of his property had been specially damaged in the sum of $30,000.00.

It is Seaboard's position that Harrelson's testimony should have been excluded from the jury's consideration because his intended use was too remote and

speculative and because his estimate of value and damages was bottomed upon profits derived from the sale of materials excavated from his property in the normal course of his business. While this contention is not without some appeal, we think the same is addressed to the weight of the evidence, which was a jury matter, and not to its admissibility.

The existence of valuable mineral deposits is a proper consideration in ascertaining the value of land taken in an eminent domain proceeding insofar as it influences the market value of the land. This rule, expressed in a great number of decisions and recognized by all the leading textwriters on this subject, has been applied indiscriminately to all forms of mineral deposits, including sand and gravel and limestone. 27 Am. Jur. (2d) Eminent Domain § 290 (1966); Annot., 156 A. L. R. 1416 (1945).

Seaboard correctly points out that most courts have held that profits from mining operations cannot constitute the basis of evaluating property containing mineral deposits. It also appears to be the general rule that the amount of minerals cannot be estimated and then multiplied by a fixed price per unit. However, the record does not disclose that either of these improper considerations formed the basis of Harrelson's estimate of the value of his land.

We have held that a landowner who is familiar with his property and its value may give his opinion relative to the value of his land and damages thereto. *South Carolina State Highway Dept. v. Wilson,* 254 S. C. 360, 175 S. E. (2d) 391 (1970). In the event that his land contains coquina and other salable materials, we see no reason why he cannot properly consider such in arriving at his evaluation, which is no more than Harrelson did in this instance.

The admission or exclusion of evidence is a matter addressed to the sound discretion of the trial judge. In the absence of a clear abuse of discretion, amount-

ing to an error of law, his ruling will not be disturbed. *South Carolina State Highway Dept. v. Wilson, supra.* Inasmuch as Harrelson's intention to develop a lake upon his property is entirely consistent with the use to which he was putting the land at the time Seaboard commenced this condemnation proceeding, and in light of other testimony which tends to indicate that the property is reasonably adaptable to this end, we find no abuse of discretion in permitting the landowner to testify as to his intended use of his property.

Having found the landowner's evidence admissible, the contention that the trial judge should have directed a verdict based upon the evidence of the condemnor cannot be sustained.

Affirmed.

Moss, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.