714 S.E.2d 308

**HILTON HEAD AUTOMOTIVE, LLC, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Respondent.**

No. 27026.

Supreme Court of South Carolina.

Heard April 20, 2011.

Decided Aug. 15, 2011.

Richard D. Bybee and M. Brent McDonald, of Smith, Bundy, Bybee & Barnett, of Mt. Pleasant, for Appellant.

Marshall H. Waldron, Jr., and Matthew D. Cavender, of Griffith Sadler & Sharp, P.A., of Beaufort, for Respondent.

Justice KITTREDGE.

This is an inverse condemnation case. Appellant Hilton Head Automotive, LLC, contends the South Carolina Department of Transportation's reconfiguration of the median crossovers on U.S. Highway 278, which Appellant's business abuts, was a taking because it deprived Appellant and its customers of the ability to enter or exit the highway by making a left turn. We disagree and affirm the decision of the circuit court granting summary judgment in favor of the Department of Transportation.

The facts of this case are similar to those of the *Hardin* case as described in *Hardin v. South Carolina Department of Transportation*, 371 S.C. 598, 641 S.E.2d 437 (2007). As in *Hardin*, the property owner in this case was deprived of

*immediate* left turn access to an abutting highway, but it retained a reasonable means of ingress and egress from that highway. Because Hilton Head Automotive ("HHA") was not deprived of a reasonable means of ingress and egress from Highway 278, it did not suffer a material injury to its easement of access to that highway, and therefore, did not suffer a compensable taking.

## I.

In response to population growth and business development along U.S. Highway 278 in Beaufort County, the South Carolina Department of Transportation ("the Department") engaged experts for the purpose of streamlining the flow of traffic on that highway. Relying on the opinions of those experts, the Department determined that it should widen the highway, close two median crossovers, and open a new median crossover at a central location between the two intersections that bound HHA's property: Burnt Church Road and Bluffton Road/Highway 46.

The properties on the north side of Highway 278 agreed among themselves to share the cost of modifying and/or building private roads that would allow left turn access to all of their properties by way of the new median crossover. The properties on the south side of the highway, however, were unable to reach such an agreement. As a result, HHA's property—which is on the south side of the highway—lost its immediate left turn access to and from Highway 278. Nonetheless, HHA retained direct right turn access to and from the eastbound lanes of Highway 278. Moreover, HHA could be reached from the westbound lanes of Highway 278 by making a U-turn at the new median crossover or at the lighted intersection with Bluffton Road/Highway 46. Correspondingly, a vehicle exiting HHA's property could reach westbound Highway 278 by making a U-turn at Burnt Church Road.[1]

HHA sought monetary and declaratory relief for inverse condemnation, violation of its due process and equal protection rights under the South Carolina Constitution, and civil con-

---

1. Bluffton Road is approximately 0.6 miles west of the entrance to HHA's property. Burnt Church Road is a mere 0.3 miles east of the entrance.

spiracy. The Department successfully moved for summary judgment on all causes of action. We certified HHA's appeal pursuant to Rule 204, SCACR.

## II.

Summary judgment "shall be rendered . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP.

## A.

### Inverse Condemnation

■■ The South Carolina Constitution provides, "[e]xcept as otherwise provided in this Constitution, private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made for the property." S.C. Const. art. I, § 13(A). In an inverse condemnation action, a private property owner seeks to establish that a government entity has taken his or her property. The governmental conduct at issue generally takes one of two forms: (1) the entity has physically appropriated private property or (2) the entity has imposed restrictions on the use of the property that deprive the owner of the property's "economically viable use." *See, e.g., Byrd v. City of Hartsville,* 365 S.C. 650, 656–58, 620 S.E.2d 76, 79–80 (2005). In this case, HHA has alleged that the Department physically appropriated private property by materially injuring an easement appurtenant thereto.[2]

Following *Hardin,* a proper analysis of an inverse condemnation claim premised on an alleged physical taking must begin with a determination of the scope of the property rights at issue. 371 S.C. at 605, 609, 641 S.E.2d at 441, 443 (explaining that a court evaluating an inverse condemnation claim premised on a physical taking should "focus . . . on a landowner's actual property interests; that is, his easements"). As an abutting property owner, HHA had "an easement for access" to Highway 278, "regardless of whether [it had] access to and

---

2. HHA has presented this matter to us solely in the context of a physical taking; we resolve the issue in the manner presented to us.

from an additional public road." *Id.* at 606, 641 S.E.2d at 442. In addition, HHA had "an easement for access to and from the public road system." *Id.*[3] If governmental action materially injured either of these easements, such that HHA no longer enjoyed the reasonable means of access to which it was entitled, a physical taking has occurred.[4] *E.g.*, *S.C. State Highway Dep't v. Allison*, 246 S.C. 389, 393, 143 S.E.2d 800, 802 (1965) ("[A]n obstruction that materially injures or deprives the abutting property owner of ingress or egress to and from his property is a 'taking' of the property, for which recovery may be had."); *Sease v. City of Spartanburg*, 242 S.C. 520, 524–25, 131 S.E.2d 683, 685 (1963) ("The protection of [the South Carolina "takings" clause] extends to all cases in which any of the essential elements of ownership has been destroyed or impaired as the result of the construction or maintenance of a public street."); *Brown v. Hendricks*, 211

---

3. In *City of Rock Hill v. Cothran*, this Court also recognized an abutter's right to proceed upon the abutting road to the next intersection. 209 S.C. 357, 369, 40 S.E.2d 239, 244 (1946) ("[T]he right of an abutting landowner to passage at least to the next intersection is a substantial property right ...."); *see also Powell v. Spartanburg County*, 136 S.C. 371, 374–76, 134 S.E. 367, 368 (1926) (holding that, where a portion of a road was formally discontinued and a new road was built to route traffic around the discontinued portion such that the two roads formed a semicircle pattern, property owners abutting on the old road "could not rightfully be deprived of the privilege of still using it to reach the newly located portion [of the road] *in either direction*," and therefore, nonsuit was improper where access to the new road was cut off at the south end of the old road, even though the new road was accessible from the north end of the old road (emphasis added)). While *Hardin* overruled *Cothran* in certain respects, it did not expressly overrule the existence of this property right. We take no position regarding the status of this right, as HHA has not lost the ability to proceed upon Highway 278 to the next intersection.

4. Certain language in *Hardin* might suggest this "material injury" test is no longer good law. We take this opportunity to clarify. The "material injury" test is firmly rooted in our jurisprudence, and *Hardin* did not overrule this well-established aspect of our takings analysis. *See Hardin*, 371 S.C. at 609, 641 S.E.2d at 443 ("We therefore overrule the 'special injury' analysis ... and specify that our focus in these cases is on how any road re-configuration affects a property owner's easements."); *id.* at 609 n. 4, 641 S.E.2d at 443 n. 4 ("[N]either landowner ... has been *deprived* of ingress or egress ... *nor* have these landowners *been injured* in their ability to enter or exit their property." (emphasis added)).

S.C. 395, 403–04, 45 S.E.2d 603, 606–07 (1947) ("The accessibility of one's property may in some instances constitute a great part of its value, and to permit a material impairment of his access would result in the destruction of a great part of the value . . . and his property is therefore as effectually taken as if a physical invasion was made thereon and a physical injury done thereto." (quoting with approval *Foster Lumber Co. v. Arkansas Valley & Western Ry. Co.*, 20 Okla. 583, 95 P. 224, 228 (1908))).

The gravamen of HHA's claim is that its easements included a right to make an immediate left turn to and from Highway 278, and such right could not be infringed without just compensation. We disagree. As recognized in *Hardin*, a regulation or traffic control device preventing immediate left turns to or from one's property does not result in a taking, provided it does not otherwise cause a material injury to the abutter's easements of access. 371 S.C. at 607, 641 S.E.2d at 442 ("[A] landowner has no right to access abutting roads in more than one direction." (citing C.C. Marvel, Annotation, *Power to restrict or interfere with access of abutter by traffic regulations*, 73 A.L.R.2d 689, 691–98 (1960))). The relevant inquiry, then, is whether the abutter has retained a reasonable means of access to and from abutting roads and the public road system. *Cf.* Roland F. Chase, Annotation, *Abutting owner's right to damages for limitation of access caused by conversion of conventional road into limited-access highway*, 42 A.L.R.3d 13, § 3, 30 (1972) ("In numerous cases . . . courts have held or recognized that an owner of property abutting on a public street or highway *is* entitled to damages where such street or highway is converted into a limited-access highway, *if* as a result of such conversion access to and from his property is made *unreasonably* circuitous or difficult." (first and second emphases added)). Historically, courts have rejected the view that a regulation regarding the direction of travel upon a particular road, without more, materially impaired an abutter's easement of access. Marvel, *supra*, 73 A.L.R.2d at § 3, 692 ("Regulations and regulatory devices, applicable to all traffic, such as . . . prohibitions against certain turns, etc., which merely impose some circuity of route upon the abutter, have been universally upheld against contentions that access was impaired."); *see also S.C. State Highway Dep't v. Carodale Assocs.*, 268 S.C. 556, 561, 235 S.E.2d 127,

129 (1977) ("[A] landowner has no property right in the continuation or maintenance of the flow of traffic past its property. Traffic on the highway ... is subject to the same police power regulations as every other member of the traveling public. Re-routing and diversion of traffic are police power regulations."); *S.C. State Highway Dep't v. Wilson*, 254 S.C. 360, 365–66, 175 S.E.2d 391, 394 (1970) (recognizing that the "clear weight of authority from other jurisdictions is to the effect that the construction of a median, or other traffic control device[ ], is an exercise of the police power"). HHA has not presented any evidence that would justify a departure from this well-established rule. Rather, the undisputed facts reveal that HHA could access the westbound lanes of Highway 278 with only minor inconvenience. As a matter of law, HHA's abutter's access to Highway 278 has not been materially impaired. Therefore, the circuit court properly granted summary judgment in favor of the Department.

At oral argument, HHA relied heavily on our decision in *South Carolina State Highway Department v. Wilson*. *Wilson* concerned whether, in the context of a clear exercise of the power of eminent domain, a median closure could form a compensable element of the damages.[5] In this case, we find no taking has occurred, and therefore, we do not reach the issue of damages. *Wilson* does not apply.

For these reasons, we uphold the circuit court's decision granting summary judgment in favor of the Department on HHA's inverse condemnation claim.

## B.

### Collateral Claims

As part of the same project to streamline traffic on Highway 278, the Department initially planned to condemn a

---

5. 254 S.C. at 368–69, 175 S.E.2d at 396 ("[I]n the instant case the proposed median is only an incidental part of the overall Department plans.... It logically follows, we think[,] that any damage attributable to the planned median is an incidental result of the exercise of the power of eminent domain, and under these circumstances we know of no sound reason for departing from the established rule in this State ... [that] '[t]he entire parcel is considered as a whole, and the inquiry is, how much has the particular public improvement decreased the fair market value of the property ....' " (quoting *S.C. State Highway Dep't v. Bolt*, 242 S.C. 411, 417, 131 S.E.2d 264, 267 (1963))).

portion of HHA's property and construct a deceleration lane serving vehicles turning right onto that property. However, the Department later changed its plans to avoid the need to acquire property from HHA. HHA alleged the Department's decision in this regard amounted to a civil conspiracy orchestrated to put HHA at a strategic disadvantage by forcing it to bring an inverse condemnation claim, in violation of HHA's right to due process of law. In addition, because the Department compensated certain other property owners for damages caused by the project and included some owners in discussions regarding the placement of the new median crossover, HHA claimed the Department violated HHA's right to equal protection. Having carefully reviewed the record, we find HHA has failed to create a genuine issue of material fact as to these collateral claims.

## III.

The median closure in this case did not work a material injury to HHA's easements of access to Highway 278, and therefore, did not amount to a physical taking of HHA's property. Further, HHA has failed to create a genuine issue of fact as to its collateral claims. Accordingly, the order of the circuit court granting summary judgment in favor of the Department is

**AFFIRMED.**

TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.