727 S.E.2d 28

CAROLINA CONVENIENCE STORES, INC., Harry Lancaster, Jr., as Power of Attorney for Harry Lancaster, Sr., and Oil Company, Inc., Appellants,

v.

CITY OF SPARTANBURG, SC, Respondent.

No. 4970.

Court of Appeals of South Carolina.

Heard Feb. 14, 2012.
Decided May 9, 2012.
Rehearing Denied June 22, 2012.

Charles J. Hodge and Timothy Ryan Langley, of Spartanburg, for Appellants.

David Leon Morrison, of Columbia, for Respondent.

WILLIAMS, J.

Carolina Convenience Stores, Inc., Harry Lancaster, Jr., and Willard Oil Company, Inc. (collectively, CCS) appeal the circuit court's grant of summary judgment in favor of the City

of Spartanburg (the City) on CCS's inverse condemnation claim against the City. We affirm.

## FACTS/PROCEDURAL HISTORY

This appeal stems from a hostage incident that occurred at CCS on July 19, 2004. Because CCS filed suit against the City based on its actions during this incident, we briefly recite the facts as background to the instant action.

On July 19, 2004, Jimmy Johnson (Johnson) fled from police after being stopped for an expired license plate. Johnson, who was armed, entered CCS and took Mrs. Saroj Patel (Mrs. Patel), a CCS employee, hostage. City police were dispatched to CCS. Major Doug Horton (Major Horton) of the City Public Safety Department was the first to arrive on the scene. Major Horton testified the initial plan was to try to talk to Johnson and encourage him to surrender. These negotiations proved unsuccessful. The police then cut off the building's power as well as introduced tear gas and pepper spray through the duct work. Despite the police's efforts over the course of the day to force Johnson to surrender, Johnson was unwilling to surrender.

The ability of police to see the interior of CCS was obscured because Johnson had taped cardboard over the windows that morning. In addition, CCS had only one front entrance, and the building contained no other windows or doors. Major Horton stated the lack of other viable entries and the presence of approximately 8,500 gallons of gasoline inside gas tanks in front of the building prompted the police to utilize a bulldozer to breach the walls of the cinder block building. Major Horton testified the police decided to use this strategy only after negotiation efforts proved futile, and they had exhausted all other less invasive remedies.

After a twelve-hour standoff, the police attempted to breach the left corner of the building with a bulldozer. At this point, Johnson, who was with Mrs. Patel in the main area of CCS, began shooting at the police. Johnson then fled with Mrs. Patel into the store's walk-in cooler. Because the police's vision was obstructed, the police decided to use the bulldozer to breach the right front corner of the building where they believed Johnson and Mrs. Patel were located. With the

demolition of the wall, Johnson and Mrs. Patel were visible, and a sharpshooter shot Johnson in the right shoulder as he and Mrs. Patel were struggling for Johnson's gun. Johnson held Mrs. Patel hostage in CCS for more than thirteen hours before the standoff ended. Mrs. Patel was unharmed, and Johnson was arrested.

During that process, the police's actions caused structural damage and other economic loss to CCS. As a result, CCS filed suit against the City alleging inverse condemnation and negligence. The City filed a motion for summary judgment on both causes of action, and the circuit court held a hearing on the City's motion on November 3, 2009. The circuit court orally granted the City's motion for the inverse condemnation claim and denied the City's motion for the negligence claim. The negligence claim was then tried before a jury the week of November 16, 2009, and after a four-day trial, the jury returned a verdict in favor of the City. The circuit court issued a formal order on November 30, 2009, granting summary judgment on CCS's inverse condemnation claim and holding the damage to the property did not constitute a "taking" that would entitle CCS to compensation under an inverse condemnation theory. This appeal followed.

## STANDARD OF REVIEW

"In reviewing the grant of a summary judgment motion, the appellate court applies the same standard that governs the trial court under Rule 56(c), SCRCP." *Boyd v. BellSouth Tel. Tel. Co.*, 369 S.C. 410, 415, 633 S.E.2d 136, 138 (2006). "Under Rule 56, SCRCP, a party is entitled to a judgment as a matter of law if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Id.* To determine whether any triable issues of fact exist for summary judgment purposes, the evidence and all inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Id.*

## LAW/ANALYSIS

CCS contends the circuit court erred in granting the City's motion for summary judgment on CCS's inverse condemnation claim. We disagree.

The South Carolina Constitution provides, "[e]xcept as otherwise provided in this Constitution, private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made for the property." S.C. Const. art. I, § 13(A). In an inverse condemnation action, a private property owner seeks to establish that a government entity has taken his or her property. *Hilton Head Auto., LLC v. S.C. Dep't of Transp.,* 394 S.C. 27, 30, 714 S.E.2d 308, 310 (2011). Inverse condemnation may result from the government's physical appropriation of private property, or it may result from government-imposed limitations on the use of private property. *Byrd v. City of Hartsville,* 365 S.C. 650, 656, 620 S.E.2d 76, 79 (2005). A plaintiff's right to recovery in an inverse condemnation case is premised upon the ability to show that he or she has suffered a taking. *Hardin v. S.C. Dep't of Transp.,* 371 S.C. 598, 604, 641 S.E.2d 437, 443 (2007).

In this case, CCS claims the City's use of a bulldozer to tear down CCS's building was an affirmative, aggressive act that constituted a physical taking of CCS's property, thereby entitling CCS to just compensation. We find the City's actions do not constitute a taking as contemplated under our Constitution or South Carolina case law.

First, the City did not physically appropriate the property for public use. *See Carolina Chloride, Inc. v. S.C. Dep't of Transp.,* 391 S.C. 429, 435, 706 S.E.2d 501, 504 (2011) (holding the elements of an action for inverse condemnation are: (1) affirmative conduct of a government entity; (2) the conduct amounts to a taking; and (3) the taking is for a public use). CCS maintained title to and possession of the property at all relevant times, and while the City's actions caused damage to CCS's property, no physical appropriation occurred. Moreover, the fact that the crime and the City's ensuing actions occurred on CCS's property is insufficient to show the City appropriated the property for public use.

We find the City's actions in this instance are more properly categorized as a legitimate exercise of its police power. Police power, "[a]lthough not clearly defined . . . is an extensive power, distinguished not only from the power of taxation, but also from that of eminent domain, and, in its

widest sense, is said to be the general power of a government to preserve and promote the general welfare, even at the expense of private rights." *City Council of Charleston v. Werner*, 38 S.C. 488, 495, 17 S.E. 33, 35 (1893). A detriment to private property that results from a legitimate exercise of police power does not constitute a taking of private property for public use. *See Richards v. City of Columbia*, 227 S.C. 538, 547–48, 88 S.E.2d 683, 687 (1955) (finding city's ordinance that caused financial loss to property owners was a legitimate exercise of police power as distinguished from a taking of their property for public use); *see also Edens v. City of Columbia*, 228 S.C. 563, 571, 91 S.E.2d 280, 282 (1956) (holding eminent domain and police powers are not the same; just compensation must be made in government's exercise of eminent domain but not for loss of property from exercise of police power); *Arnold v. City of Spartanburg*, 201 S.C. 523, 538, 23 S.E.2d 735, 741 (1943) ("[T]he law will never, by any construction, advance a private interest to the destruction of a public interest; but, on the contrary, [ ] it will advance the public interest, so far as it is possible, though it be to the prejudice of a private one."). Under these facts, we find an inverse condemnation claim was not the proper avenue of recourse for any damage caused by the City's actions.

We find support for this conclusion from other states as well. In a factually similar case, the California Supreme Court found a convenience store owner could not bring an inverse condemnation against the City of Sacramento for property damage caused by its police officers in an effort to apprehend a fleeing suspect who had taken refuge in the convenience store. *Customer Co. v. City of Sacramento*, 10 Cal.4th 368, 41 Cal.Rptr.2d 658, 895 P.2d 900, 901 (1995). The court concluded the convenience store could not bring an inverse condemnation action to recover damages caused by the police's firing of tear gas into the store. *Id.* The court stated,

Although the requirement of 'just compensation' has been extended, in limited circumstances—beyond its traditional context involving the taking or damaging of private property in connection with public improvement projects—to encompass government regulations that constitute the functional equivalent of an exercise of eminent domain, [it] . . . never has been applied to require a public entity to compen-

sate a property owner for property damage resulting from the efforts of law enforcement officers to enforce the criminal laws.

*Id.* 41 Cal.Rptr.2d 658, 895 P.2d at 905–06.

The California Supreme Court noted the public policy implications from its decision as well. The court went on to hold,

> In the same manner, law enforcement officers must be permitted to respond to emergency situations that endanger public safety, unhampered by the specter of constitutionally mandated liability for resulting damage to private property and by the ensuing potential for disciplinary action. This court never has sanctioned an action for inverse condemnation seeking recovery for incidental damage to private property caused by law enforcement officers in the course of efforts to enforce the criminal law. Permitting [the plaintiff] to bring an action for inverse condemnation under the circumstances of the present case would constitute a significant, unprecedented, and unwarranted expansion of the scope of the just compensation requirement and might well deter law enforcement officers from acting swiftly and effectively to protect public safety in emergency situations.

*Id.* 41 Cal.Rptr.2d 658, 895 P.2d at 910–11. Moreover, the majority of states considering this issue have determined a property owner cannot bring an inverse condemnation action against the government for destruction or damage to private property caused by police actions in attempting to enforce criminal laws. *See e.g., Certain Interested Underwriters at Lloyd's London Subscribing to Certificate No. TPCLDP217477 v. City of St. Petersburg,* 864 So.2d 1145, 1148 (Fla.Dist.Ct.App.2003) (finding damage to apartment caused by police's use of "flash-bang" grenades in executing a search warrant did not constitute a taking under just compensation clause and any recovery for damages was only available under state tort law); *McCoy v. Sanders,* 113 Ga.App. 565, 148 S.E.2d 902, 905–06 (1966) (holding damage to private property caused during a search for a missing person was a legitimate exercise of police power, thereby precluding inverse condemnation claim); *Indiana State Police v. May,* 469 N.E.2d 1183, 1184 (Ind.Ct.App.1984) (finding the only remedy for damage caused to private property after tear gas was fired into home to capture a suspect was under state tort law, not as an action

for inverse condemnation); *Kelley v. Story Cnty. Sheriff*, 611 N.W.2d 475, 482 (Iowa 2000) (holding damage to residence when executing an arrest warrant was the result of a reasonable exercise of police power rather than eminent domain so that no viable cause of action for inverse condemnation existed); *Sullivant v. City of Oklahoma City*, 940 P.2d 220, 226 (Okla.1997) (holding situations involving police action that caused incidental or consequential property damage were properly classified as an exercise of police power as opposed to eminent domain because intent was to execute a warrant or undertake other police activity, not to take private property and convert it to public use); *Brutsche v. City of Kent*, 164 Wash.2d 664, 193 P.3d 110, 121 (2008) (holding the use of a battering ram to gain entry to execute a search warrant did not constitute a taking).

Because CCS failed to demonstrate any facts or evidence that would entitle them to relief under an inverse condemnation theory, we hold the circuit court properly granted the City's motion for summary judgment on CCS's inverse condemnation claim.[1]

## CONCLUSION

Based on the foregoing, the circuit court's grant of summary judgment on CCS's inverse condemnation claim is

**AFFIRMED.**

THOMAS and LOCKEMY, JJ., concur.

---

1. We also note the just compensation clause of the Constitution requires "just compensation be[ ] *first made* for the property." S.C. Const. art. I, § 13(A) (emphasis added). A plain reading demonstrates the drafters intended any governmental taking of a person's property under the eminent domain power to be one where the government pays for its use of the private property *prior* to taking it for public use. We do not believe the drafters intended to compensate private property owners for property damage under this clause for police action taken to protect the public and enforce criminal laws.