# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Carolina Convenience Stores, Inc., Harry Lancaster, Jr. as
Power of Attorney for Harry Lancaster, Sr. and Willard
Oil Company, Inc., Petitioners,

v.

City of Spartanburg, Respondent.

Appellate Case No. 2012-212473

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Spartanburg County
E. C. Burnett, III, Special Circuit Court Judge,
Roger L. Couch, Circuit Court Judge

---

Opinion No. 27663
Heard June 25, 2014 – Filed August 31, 2016

---

## AFFIRMED AS MODIFIED

---

Charles J. Hodge and Timothy Ryan Langley, both of
Hodge & Langley Law Firm, P.C., of Spartanburg, for
Petitioners.

David Leon Morrison, of Morrison Law Firm, L.L.C., of
Columbia, for Respondent.

---

**CHIEF JUSTICE PLEICONES:**  Carolina Convenience Stores, Inc., Harry Lancaster, Jr., and Willard Oil Company, Inc., (collectively, Petitioners) brought claims for inverse condemnation and negligence against the City of Spartanburg (the City) for damages to Petitioners' convenience store caused by the City's police department during its handling of a hostage situation.  The circuit court granted the City's summary judgment motion as to the inverse condemnation claim, but denied it as to the negligence claim.  The jury returned a verdict in the City's favor as to Petitioners' negligence claim.  Petitioners appealed only the inverse condemnation ruling.  The court of appeals affirmed, finding the circuit court properly granted summary judgment as to the inverse condemnation claim. *Carolina Convenience Stores, Inc. v. City of Spartanburg,* 398 S.C. 27, 727 S.E.2d 28 (Ct. App. 2012).  We granted Petitioners' request for a writ of certiorari and now affirm the court of appeals' decision as modified.

## FACTS

Jimmy Johnson fled from police after being stopped for having an expired vehicle license.  Johnson, who was armed, entered Carolina Convenience Store in Spartanburg, where he took Saroj Patel hostage.  The City's police department negotiated with Johnson in an effort to encourage Johnson to surrender.  After the negotiations were unsuccessful, the police department cut off the power to the convenience store and introduced tear gas and pepper spray into the building's ventilation system in another vain attempt to induce surrender.

During these attempts to secure Johnson's surrender, the City's police department was unable to determine, visually or otherwise, Patel and Johnson's location within the convenience store.  After a twelve hour standoff, the police decided to breach the building with a bulldozer, which resulted in severe physical damage to the property.  Given the substantial damage to the store, Petitioners were later asked by the City to tear it down as it did not comply with ordinances regarding vacant commercial buildings in its damaged state.  After Petitioners refused, the City demolished the building.

Petitioners' inverse condemnation action was based on the police department's actions during the hostage situation, not the City's later decision to demolish the building.

**STANDARD OF REVIEW**

"Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[1] *Lanham v. Blue Cross & Blue Shield of S.C., Inc.,* 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002).

**DISCUSSION**

The South Carolina Constitution provides that, "private property shall not be taken . . . for public use without just compensation being first made for the property." Art. I, § 13(A). Inverse condemnation occurs when a government agency takes private property without formally exercising its power of eminent domain. *Carolina Chloride, Inc. v. S.C. Dep't. of Transp.,* 391 S.C. 429, 706 S.E.2d 501 (2011). Inverse condemnation may result either from the government's physical appropriation of private property or from government-imposed limitations on the use of private property. *Byrd v. City of Hartsville,* 365 S.C. 650, 656, 620 S.E.2d 76, 79 (2005).

To prevail on an inverse condemnation claim, one must prove: (1) an affirmative act by a government entity; (2) that amounts to a taking; and (3) the taking is for public use. *Carolina Chloride,* 391 S.C. at 435, 706 S.E.2d at 504. The burden of proof is on an owner of private property to establish that a government entity has taken his property. *Hilton Head Auto., L.L.C. v. S.C. Dep't of Transp.,* 394 S.C. 27, 30, 714 S.E.2d 308, 310 (2011).

In affirming the circuit court's grant of summary judgment, the court of appeals found the City's actions did not amount to a compensable taking because the property had not been physically appropriated for public use, and because no physical appropriation occurred even though there was damage to the property. *Carolina Convenience*, 398 S.C. at 30–31, 727 S.E.2d at 31–33. The court of appeals further held there was no compensable taking because the City's actions were a valid exercise of the police power. *Id.*

Petitioners contend the Court of Appeals erred in: (1) not applying the balancing test found in *Penn Central Transportation Co. v. City of New York,* 438 U.S. 104

---

[1] The parties concede there is no question of fact.

(1978); (2) holding the City's actions were a valid exercise of its "police power";[2] and (3) failing to hold Petitioners' constitutional rights to property trump the City's exercise of its police power even if the City's actions were a valid exercise of such power. While Petitioners raise multiple arguments, the narrow issue in this case is whether the City's actions constituted a compensable taking as contemplated by S.C. Const. art. I, § 13(A). As explained below, we hold that they did not.

Whether there has been a taking by inverse condemnation within the meaning of the South Carolina Constitution is a question for the court. *E.g.*, *Carolina Chloride, Inc. v. Richland County*, 391 S.C. 154, 714 S.E.2d 869 (2011). We reject Petitioners' contention that the actions of the City's police department constituted a taking, and join the majority of jurisdictions[3] in holding that the South

---

[2] When we have made a distinction between "police power" and eminent domain, we have referred to "police power" as the State's power to *enact* laws and regulations that affect a person's use of his property (as in zoning), and not the power to enforce laws through law enforcement actions. *See, e.g.*, *Edens v. City of Columbia*, 228 S.C. 563, 91 S.E.2d 280 (1956) (holding that eminent domain and police power are not the same and just compensation must be made only in the government's exercise of eminent domain); *cf.* Black's Law Dictionary 1276 (9th ed. 2009) (defining "police power" as "the inherent and plenary power of a sovereign to make all law necessary and properly to preserve public security, order, health, morality, and justice"). Stated differently, the power being exercised here was the power to *enforce* law, rather than the power to *enact* law.

[3] Whether a compensable taking has occurred in this context is a novel question in South Carolina. Other jurisdictions are split on the answer. *Compare Brutsche v. City of Kent,* 193 P.3d 110, 121 (Wash. 2008) (espousing the majority rule and holding the use of a battering ram to gain entry to execute a search warrant did not constitute a taking); *Certain Interested Underwriters at Lloyd's London Subscribing to Certificate No. TPCLDP217477 v. City of St. Petersburg,* 864 So.2d 1145, 1148 (Fla. Dist. Ct. App. 2003) (applying the majority rule and finding damage to apartment caused by police use of "flash-bang" grenades in executing a search warrant did not constitute a taking under just compensation clause and any recovery for damages was only available under state tort law) *with Wegner v. Milwaukee Mutual Insurance Co.*, 479 N.W.2d 38 (Mo. 1992) (illustrating the minority position and holding that where an innocent third party's property is damaged by the police in the course of apprehending a suspect, such action

Carolina Constitution does not contemplate that damage occasioned to private property by law enforcement in the course of performing their duties constitutes a compensable taking.[4]  In interpreting S.C. Const. art. I, § 13(A), we are persuaded that the framers of the Constitution did not intend that law enforcement operate under the fear that their actions could lead to takings-based liability.

We find the Court of Appeals erred in its analysis of Petitioners' takings claim, which relied on its conclusion that there was no taking because the city did not physically appropriate the property for public use.  Instead, we simply hold the damage to Petitioners' property during the police department's hostage rescue effort did not constitute a taking as contemplated by the South Carolina Constitution.  In addition, we find the Court of Appeals erred in characterizing the police department's actions as a "legitimate exercise of its police power."  As we have explained above, the term "police power" as it relates to eminent domain actions refers to the government's authority to limit the use of private property through its regulatory authority, and thus has no relevance to the resolution of this matter.

Finally, the Court of Appeals erred in relying on *Richards v. City of Columbia*, 227 S.C. 538, 88 S.E.2d 683 (1955) and *Edens v. City of Columbia*, *supra* for the proposition that "[a] detriment to private property . . . result[ing] from a legitimate exercise of police power does not constitute a taking of private property for public use."  *Carolina Convenience,* 398 S.C. at 32, 727 S.E.2d at 30.  In our view, such a broad holding runs counter to our modern jurisprudence, which recognizes that an action for inverse condemnation may lie *even* when a governmental entity takes property pursuant to a "legitimate exercise of its police power."  *Cf. Byrd,* 365 S.C. at 658–62, 620 S.E.2d at 80–82.

Accordingly, we affirm the Court of Appeals' decision as modified and hold that property damage resulting from the actions of law enforcement officers acting in their law enforcement capacity is not a compensable taking under the South Carolina Constitution.

---

constitutes a compensable taking based on the language of Missouri's Constitution).

[4] Accordingly we do not reach Petitioners' *Penn Central* argument, one we would need decide only if we found a regulatory taking.

The decision of the Court of Appeals is therefore

**AFFIRMED AS MODIFIED.**

**Acting Justice Jean H. Toal, concurs. BEATTY, J., concurring in result only. KITTREDGE and HEARN, JJ., dissenting in separate opinions.**

**JUSTICE KITTREDGE:**  Because I would reverse the court of appeals, I dissent. I join the dissenting opinion of Justice Hearn but write separately to emphasize my view of the very limited reach of an inverse condemnation claim where law enforcement destroys private property.  The majority claims it is following the majority rule and cites cases where law enforcement damaged private property in the execution of a search warrant.  I, too, agree that no compensable taking occurs where law enforcement is acting pursuant to a warrant or other lawful process, and the cases from other jurisdictions cited in the majority opinion were correctly decided in my judgment.  Here, however, we are presented with the rare situation of a wholly innocent property owner whose property was destroyed by the actions of law enforcement.  The fact that the police action was defensible should not be dispositive in defeating a constitutional takings claim.  I believe there is a fundamental distinction between a state's exercise of its constitutional "police powers" and a particular law enforcement action.  I do recognize that the distinction is sometimes lost, as it becomes convenient to use the term "police powers" in a generic sense, rather than a constitutional sense.  The exercise of police powers, in a constitutional sense, is understood as the government's exercise of legislative authority to impose laws to promote the general welfare of the people.  Take forfeiture laws, for example.  Forfeiture laws are a clear exercise of the state's police powers in a constitutional sense.  A decision by law enforcement to destroy the property of an innocent property owner, however laudable and defensible the decision may be, finds no legislative authority in South Carolina and is thus not an exercise of constitutional police powers.  And the constitution is what this case is all about.  The takings clause, as Justice Hearn makes clear, does not contain the speculative public policy concerns and fears advanced in the majority opinion.  I would allow this admittedly distinctive and rare inverse condemnation claim to proceed, while acknowledging the overwhelming majority of law enforcement actions would not give rise to a constitutional takings claim.

**JUSTICE HEARN:**  I agree with the majority that the narrow question in this case is whether the City's actions constitute a compensable taking pursuant to Article 1, Section 13(A) of the South Carolina Constitution.  However, I do not agree with the majority's analysis because in my view, it marginalizes the rights of property owners protected by our constitution.  Accordingly, I dissent.

Our constitution provides: "private property shall not be taken . . . for public use without just compensation being first made for the property."  S.C. Const. art. I., § 13(A).  This provision is substantially similar to the Fifth Amendment of the United States Constitution.  *See Hardin v. S.C. Dep't of Transp.*, 371 S.C. 598, 604, 641 S.E.2d 437, 441 (2007) ("South Carolina courts have embraced federal takings jurisprudence as providing the rubric under which we analyze whether an interference with someone's property interests amounts to a constitutional taking.").

From its inception, the takings clause has been designed to protect the right of private property owners to the value—not just the existence—of their property from government intrusion.  *See* 1 William Blackstone, Commentaries, *138 ("The individual's right of property consists in the free use, enjoyment, and disposal of all his acquisitions, without any control or diminution, save only by the laws of the land.").  This principle is inherent in the Court's understanding that a taking does not have to be permanent to be compensable.  *See Byrd v. City of Hartsville*, 365 S.C. 650, 657, 620 S.E.2d 76, 79 (2005) ("[W]e remove the element 'some degree of permanence' [from the requirements for an inverse condemnation claim], for it conflicts with the principle that the government must compensate for even a temporary taking.").

Here, we consider the question of whether an inverse condemnation claim arises where private property is destroyed by the government during the course of an emergency.  I believe this question has a simple answer.  The police damaged the convenience store so significantly as to "take" the property from its owners, and this taking clearly served the public use of apprehending a dangerous suspect.  Regardless of who is assigned fault for this act, faithful interpretation of our constitution demands compensation for the innocent individual.[5]

---

[5] I would not extend this rule to situations where the claimant is complicit in the damage to his property, such as where police executing a valid search warrant have to break the door down to gain entry.

The majority would answer this question in the negative because it concludes no taking occurs where property is damaged by law enforcement officers in the performance of their duties. However, this position conflicts with the well-founded principle that a taking occurs wherever damage to property deprives its owner of the normal use and enjoyment. *See S.C. State Highway Dep't v. Wilson*, 254 S.C. 360, 366–67, 175 S.E.2d 391, 395 (1970) ("We have consistently held that the deprivation of the ordinary beneficial use and enjoyment of one's property is equivalent to the taking of it . . . . [T]here is no distinction between taking and damaging."). Further, the fact the damage was done here by law enforcement in an emergency situation is of no moment; takings clause jurisprudence has never turned on whether the government's actions were justified. *See First English Evangelical Lutheran Church of Glendale v. L.A. Cty.*, 482 U.S. 304, 315 (1987) ("This basic understanding of the Amendment makes clear that it is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking.").

In my view, the majority is driven by an underlying policy concern—law enforcement officers risk their lives to protect the citizens and communities they serve, and allowing for compensation will somehow discourage them from taking emergency and potentially life-saving measures. While I recognize law enforcement officers should be applauded for the acts they undertake in the interest of public safety, it should not be at the expense of the constitutional right of an innocent property owner to be justly compensated when property is taken for a public use. Private property is taken by the government for a number of beneficial purposes—hospitals, school, and roads to name a few. Until today, our takings clause jurisprudence has never been shaped by the concern that government will not undertake such improvements for fear it will require compensation.

The takings clause exists to protect the right of private property and ensures that no single innocent property owner shoulders the entire burden of government action which serves us all. *See Armstrong v. United States*, 364 U.S. 40, 49 (1960) ("The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.").

I would therefore allow this inverse condemnation claim by the owners whose property was destroyed by the government during the course of an

emergency to proceed.  Accordingly, I would reverse the court of appeals' decision and remand to the trial court for a hearing on the merits.