20433

The SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Appellant, v. CARODALE ASSOCIATES and Arthur Keels, Respondents.

(235 S. E. (2d) 127)

*Messrs. Daniel R. McLeod, Atty. Gen., A. Camden Lewis* and *Donald V. Myers, Asst. Attys. Gen.,* and *William F. Austin,* of Columbia, *for Appellant,*

*Michael H. Quinn, Esq.,* of Columbia, *for Respondent,*

May 18, 1977.

NESS, Justice:

This is an appeal involving the condemnation of less than one-half acre of land (.47 acres) by the appellant South Carolina State Highway Department. The Board of Condemnation awarded $14,000.00 and the landowner appealed. A trial *de novo* resulted in a jury verdict in favor of the landowner in the amount of $117,000.00. We find reversible error of law necessitating a new trial.

The landowner's property was acquired for an exit ramp off Interstate No. 77 being constructed in Richland County. A portion of U. S. Highway No. 1, fronting on the landowner's property prior to the condemnation, will be relocated creating a cul de sac contiguous to the respondent's land. Access to the relocated U. S. Highway No. 1 will be afforded by the construction of a connecting street.

Appellant continuously objected to the admission of testimony relating to diversion of traffic and loss of frontage on the highway.[1] Appellant's motion for a new trial was also premised on this alleged error.

---

[1] Although interposed objections to the testimony of the numerous witnesses were profuse, the following occurring during the direct examination of the landowner's first witness is representative:

"Mr. Lewis: Your Honor, I'm going to have to object to this testimony as being irrelevant and it shouldn't go to any just compensation, the frontage on the highway, or the traffic, or the right to a highway is not compensable damages under our law.

"The Court: All right. I overrule your objection . . .

\* \* \*

"Mr. Lewis: Again we must renew our objection. The relocation of the road and the frontage on the road and the continuance of the highway is not compensable damages under the laws of the State of South Carolina.

"The Court: I think it is, Mr. Lewis. I overrule your objection . . ." (Tr. pages 65-67.)

A landowner has no vested right in the continuance of a public highway; the abandonment of a highway, without its being closed, is *damnum absque injuria*. *Wilson v. Greenville County,* 110 S. C. 321, 96 S. E. 301 (1918). Likewise, the State is under no duty to maintain a minimum level of traffic flow. 4A Nichols, Eminent Domain, Section 14.244[4]. Nevertheless, the vacation of a street or the creation of a cul de sac with the concomitant diversion of traffic and loss of frontage has been held a "taking" of property. *City of Rock Hill v. Cothran,* 209 S. C. 357, 40 S. E. (2d) 239 (1946).

Closing a street inherently produces a diversion of traffic and loss of frontage on a viable traffic artery. However, these repercussions are not compensable elements of damage. Succinctly, the restriction of ingress or egress to and from one's property is the right which must be compensated if infringed when a highway is closed by condemnation. *South Carolina State Highway Department v. Wilson,* 254 S. C. 360, 175 S. E. (2d) 391 (1970); *South Carolina State Highway Department v. Allison,* 246 S. C. 389, 143 S. E. (2d) 800 (1965); *Sease v. City of Spartanburg,* 242 S. C. 520, 131 S. E. (2d) 683 (1963); *Powell v. Spartanburg County,* 136 S. C. 371, 134 S. E. 367 (1926).

The landowner has no property right in the continuation or maintenance of the flow of traffic past its property. Traffic on the highway, to which they have access, is subject to the same police power regulations as every other member of the traveling public. Re-routing and diversion of traffic are police power regulations. 42 A. L. R. (3d) 148, 163; *Woodland Market Realty v. City of Cleveland,* 426 F. (2d) 955 (6th Cir. 1970); *Hollis v. Armour & Company,* 190 S. C. 170, 179, 2 S. E. (2d) 681 (1939); 8 South Carolina Digest, Eminent Domain, Key 2(1).

We agree with the appellant that testimony relating to alleged damages for which restitution is not recognized at law was erroneous and prejudicial dictating a new trial.

Since it is probable the same questions will arise at the next trial, we consider the following exceptions.

Appellant asserts error in the refusal of the court to accept or charge the "scope-of-the-project test." The trial court ruled the test was not recognized in South Carolina. We need not reach this issue as the test, even if cognizable in this State, is not applicable to the instant case. Mr. Justice Stewart in *United States v. Reynolds,* 397 U. S. 14, 90 S. Ct. 803, 25 L. Ed. (2d) 12 (1970) fully discussed the precept:

"The Court early recognized that the 'market value' of property condemned can be affected, adversely or favorably, by the imminence of the very public project that makes the condemnation necessary. And it was perceived that to permit compensation to be either reduced or increased because of an alteration in market value attributable to the project itself would not lead to the 'just compensation' that the Constitution requires. On the other hand, the development of a public project may also lead to enhancement in the market value of neighboring land that is not covered by the project itself. And if that land is later condemned, whether for an extension of the existing project or for some other public purpose, the general rule of just compensation requires that such enhancement in value be wholly taken into account, since fair market value is generally to be determined with due consideratiton of all available economic uses of the property at the time of the taking." 397 U. S. at 16-17, 90 S. Ct. at 805.

The facts of this case do not disclose a bifurcated condemnation with an intervening enhancement of property values attributable to the project. The "scope-of-the-project test" was created to prevent escalated or depressed prices of purchases due to the condemnation project when later acquired land was initially contemplated by the project. In *Reynolds* over 250 acres of land was condemned to create a reservoir. The case concerned 78 acres of the land taken for construction of recreational facilities which was not referred to in the initial design memorandum:

"* * * The parties agree that if the acreage in issue was 'probably within the scope of the project from the time the Government was committed to it,' substantially less compensation is due than if it was not. For if the property was probably within the project's original scope, then its compensable value is to be measured in terms of agricultural use. If, on the other hand, the acreage was outside the original scope of the project, its compensable value is properly measurable in terms of its economic potential as lakeside residential or recreational property." 397 U. S. at 18, 90 S. Ct. at 806.

In the instant case, the condemned property was initially contemplated by the project and included in the first public design hearing. The trial court correctly charged that the compensable measure of damages was the value of the land at the date of the taking plus any resulting injury to the remaining property offset by any benefits to the remaining land as a result of the project. See *South Carolina State Highway Department v. Freeman,* 263 S. C. 522, 211 S. E. (2d) 561 (1975); *South Carolina State Highway Department v. Miller,* 237 S. C. 386, 117 S. E. (2d) 561 (1960); *Smith v. City of Greenville,* 229 S. C. 252, 92 S. E. (2d) 639 (1956); §§ 33-135, 33-136, Code of Laws, 1962.

Appellant also asserts as error the introduction of testimony as to the prior condemnation award. Section 33-139, Code of Laws, 1962, provides for a jury trial *de novo* after the appeal of a decision of the Board of Condemnation. Prior condemnation proceedings and awards are inadmissible in the trial *de novo. Wateree Power Company v. Rion,* 113 S. C. 303, 102 S. E. 331 (1920); 29A C. J. S. Eminent Domain § 273(7); 30 C. J. S. Eminent Domain § 372(6). A review of the record indicates there was no specific reference to the Board of Condemnation or its award. While it is inferable that the testimony is merely the Highway Department's pre-trial assessment of just com-

pensation, the coincidental similarity of the Department's assessment and the condemnation award certainly could produce adverse connotations. Ultimate prudence would dictate exclusion of testimony which hints of impropriety. However, we reserve comment on the existence of error or prejudice on this issue as the question may not be presented again in the impending new trial.

Appellant finally asserts that pre-trial discovery pursuant to Circuit Court Rule 88 was unduly restricted by the trial court. It is conceded that all requested material has been disclosed and we need not reach this issue in light of the forthcoming new trial.

The remaining exceptions are without merit.

We, therefore, reverse the judgment of the trial court and remand for a new trial.

Reversed and remanded.

LEWIS, C. J., and LITTLEJOHN, RHODES and GREGORY, JJ., concur.