781 S.E.2d 726

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Respondent,**

v.

**David Franklin POWELL, Appellant.**

**Appellate Case No. 2013–001759.**
**No. 5368.**

Court of Appeals of South Carolina.

Heard Dec. 10, 2014.
Decided Dec. 9, 2015.
Rehearing Denied Feb. 19, 2016.

300

Howell V. Bellamy, Jr. and Robert S. Shelton, both of Bellamy, Rutenberg, Copeland, Epps, Gravely & Bowers, P.A., of Myrtle Beach, for appellant.

John B. McCutcheon, Jr., of Thompson & Henry, P.A., of Conway; and Beacham O. Brooker, Jr., of the South Carolina Department of Transportation, of Columbia, for respondent.

LOCKEMY, J.

In this appeal from a condemnation action, David Powell argues the circuit court erred in granting the South Carolina Department of Transportation's (SCDOT) motion for partial summary judgment. We affirm.

## FACTS/PROCEDURAL BACKGROUND

On August 27, 2010, SCDOT filed a notice of condemnation acquiring 0.183 acres of a 2.51 acre tract of unimproved land owned by Powell at the northeast corner of Old Socastee Highway and Emory Road in Horry County. The acquisition occurred in conjunction with a highway improvement project involving nearby Highway 17. SCDOT offered Powell $72,000 for the condemned property. Powell rejected SCDOT's offer and requested a jury trial to determine just compensation.

Prior to the condemnation, Powell's property was accessible from Highway 17 via Emory Road. As a result of SCDOT's highway improvement project, the intersection of Emory Road and Highway 17 was closed and Powell's property was accessible only from Highway 17 via an entrance one mile north of his property on to Old Socastee Highway. Powell's property was taken for the purpose of converting the corner of Emory Road and Old Socastee to a curve. Prior to the start of trial, SCDOT changed its road plan. As a result of the change, Old Socastee Highway would no longer extend to the entrance to Highway 17, but would dead-end into a cul-de-sac just north of Powell's property. In order to access Powell's property from Highway 17 after the road change motorists would have to travel a longer distance (roughly 2 miles).

On March 14, 2013, SCDOT submitted the revised appraisal report of its real estate valuation expert, Corbin Haskell, outlining his opinion of just compensation under SCDOT's changed road plan. Whereas Haskell had assessed no dam-

ages to Powell's remaining property in any of his three prior reports, in his fourth report Haskell determined Powell's remaining property had been damaged fifty percent as a result of the taking, and he was entitled to compensation in the amount of $517,000.

One week later, SCDOT submitted a fifth appraisal report from Haskell. As he did in his first three reports, Haskell determined there were no damages to the remainder of Powell's property. On the cover of his report, Haskell included the following disclaimer: "I have been requested to revise my appraisal since legal counsel advises that the reconfiguration of the roadways does not constitute damages to the remainder in this case. Therefore, there are no damages to the subject as the property will have full ingress/egress via an adjoining road 'after' the acquisition."

On March 25, 2013, SCDOT filed a motion in limine to exclude any evidence of diminution in the value of Powell's remaining property caused by the loss of access to Highway 17. SCDOT asserted Powell's property did not abut Highway 17 and he had no private property right with respect to that road. SCDOT maintained Powell's easements with respect to the public roads his property abutted had not been disturbed by the project. Additionally, SCDOT requested the court exclude damages to the remainder of Powell's property caused by loss of visibility from Highway 17. At the hearing on SCDOT's motion, Powell's counsel requested SCDOT convert its motion to one of partial summary judgment to accommodate an appeal. SCDOT agreed to do so. In a May 14, 2013 order, the circuit court granted SCDOT's motion for partial summary judgment. Citing *Hardin v. South Carolina Department of Transportation*, 371 S.C. 598, 641 S.E.2d 437 (2007), the court found Powell's loss of access was not compensable and excluded any evidence regarding change in access from the trial. The court declined to rule on the issue of loss of visibility. Powell's subsequent Rule 59(e), SCRCP, motion to alter or amend was denied. This appeal followed.

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, this court applies the same standard that governs the trial court under Rule 56(c), SCRCP; summary judgment is proper

when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Fleming v. Rose,* 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). In determining whether a genuine issue of fact exists, the evidence and all reasonable inferences drawn from it must be viewed in the light most favorable to the nonmoving party. *Sauner v. Pub. Serv. Auth. of S.C.,* 354 S.C. 397, 404, 581 S.E.2d 161, 165 (2003).

## LAW/ANALYSIS

### I. *Hardin*

Powell argues the circuit court erred in finding our supreme court's holding in *Hardin v. South Carolina Department of Transportation,* 371 S.C. 598, 641 S.E.2d 437 (2007), an inverse condemnation case, prevents the consideration of access damages to remaining property in direct condemnation actions.

■ Under South Carolina's Constitution, "private property shall not be taken for public use ... without 'just compensation' being first made for the property." S.C. Const. art. I, § 13(A). "In determining just compensation, only the value of the property to be taken, any diminution in the value of the landowner's remaining property, and any benefits as provided in § 28–2–360 may be considered." S.C.Code Ann. § 28–2–370 (2007).

> In order for the landowner to be compensated fully, the government must "put the owners in as good position pecuniarily as if the use of their property had not been taken. They are entitled to have the full equivalent of the value of such use at the time of the taking paid contemporaneously with the taking."

*S.C. Dep't of Transp. v. Faulkenberry,* 337 S.C. 140, 148, 522 S.E.2d 822, 826 (Ct.App.1999) (quoting *Phelps v. United States,* 274 U.S. 341, 344, 47 S.Ct. 611, 71 L.Ed. 1083 (1927)).

In *Hardin,* the plaintiffs filed an inverse condemnation action against SCDOT alleging the closure of a break in the median of an abutting highway deprived the traffic leaving their properties of the ability to cross the highway and constituted a taking. 371 S.C. at 603, 641 S.E.2d at 440. The trial court ruled the plaintiffs suffered a compensable taking, and

the court of appeals affirmed. *Id.* at 603, 641 S.E.2d at 440. The supreme court reversed the court of appeals and found there was no taking. *Id.* at 610, 641 S.E.2d at 444.

Prior to *Hardin,* "a landowner's ability to recover damages as a result of a re-configuration of road access depended on the location of his land with reference to the road vacated and the effect of the vacation on his rights as an abutting landowner." *Carolina Chloride, Inc. v. S.C. Dep't of Transp.,* 391 S.C. 429, 433, 706 S.E.2d 501, 503 (2011) (citing *City of Rock Hill v. Cothran,* 209 S.C. 357, 40 S.E.2d 239 (1946)). "The *Cothran* [c]ourt held a landowner is not entitled to recover damages unless he has sustained a 'special injury,' which is an injury different in kind and not merely in degree from that suffered by the public at large." *Id.* (citing *Cothran,* 209 S.C. at 368–69, 40 S.E.2d at 243–44). "In *Hardin,* the [c]ourt abandoned the 'special injury' analysis which previously existed in this state's jurisprudence, and specified that the focus in these cases should be how any road re-configuration affects a property owner's easements." *Id.* (citing *Hardin,* 371 S.C. at 609, 641 S.E.2d at 443).

■ Pursuant to *Hardin,* "a property owner in South Carolina has an easement for access to and from any public road that abuts his property, regardless of whether he has access to and from an additional public road." 371 S.C. at 606, 641 S.E.2d at 442. A property owner "also has an easement for access to and from the public road system." *Id.* The *Hardin* court held

> [a]s long as the owner has access to and from the remainder of the road that continues to abut his property, his easement with respect to that road remains intact. Further, as long as a landowner still has access to the public road system, this easement is unaffected. This reasoning is in line with the notion that a landowner has no right to access abutting roads in more than one direction.

*Id.* at 607, 641 S.E.2d at 442 (footnote omitted). The *Hardin* court found the plaintiffs continued to have a means of ingress and egress from the highway and the public road system, and therefore, their property rights had not been disturbed. 371 S.C. at 610, 641 S.E.2d at 444.

Here, Powell argues the issue of admissibility of evidence relating to the increased remoteness and complexity of access to his property resulting from the SCDOT road project is essential to the determination of just compensation. He asserts that because his property is zoned "highway commercial," the ease of access to his property affects its value. Powell contends the route to his property is no longer visible to northbound travelers on Highway 17 and is only accessible indirectly.

Powell further maintains that had the legislature intended to prevent consideration of any particular evidence of diminution in value to remaining property, it could have inserted limitation language into the Eminent Domain Procedure Act. Instead, Powell notes, section 28-2-370 provides *any* diminution in value of a landowner's remaining property is to be considered in determining just compensation. *See* S.C.Code Ann. § 28-2-370 (2007) ("In determining just compensation, only the value of the property to be taken, any diminution in the value of the landowner's remaining property, and any benefits as provided in § 28-2-360 may be considered.").

Powell argues the circuit court's reliance on *Hardin* is improper. In *Hardin,* our supreme court held the first step in determining if a taking occurred is to look at the property right the plaintiff held prior to the government action for which the plaintiff complained. 371 S.C. at 609, 641 S.E.2d at 443. Next, the court must determine whether the government action materially injured the property right such that the plaintiff "no longer enjoyed the reasonable means of access to which it was entitled." *Hilton Head Auto., LLC v. S.C. Dep't of Transp.,* 394 S.C. 27, 31, 714 S.E.2d 308, 310 (2011). Powell contends the *Hardin* analysis is unnecessary in direct condemnation cases, like the present case, where a taking has already been established. He asserts that pursuant to section 28-2-370, the court must consider *all* evidence of damage to the landowner.

Conversely, SCDOT argues redesigning highways and redirecting traffic are police power regulations. SCDOT asserts any diminution in the value of Powell's remaining property after the closure of the intersection of Emory Road and Highway 17 is an incidental result of a police power of the

State, not one of eminent domain, and is not compensable. SCDOT contends the closure of the intersection was not a taking that deprived Powell of any pre-existing property right. Additionally, SCDOT contends Powell's property still has full access to each of the roads it abuts (Emory Road and Old Socastee Highway) and to the general system of roads by traveling south on Emory Road. SCDOT argues the added distance is not unreasonable and neither of the easements described in *Hardin* have been taken.

We find *Hardin* is not applicable to the present case. *Hardin* is an inverse condemnation case which does not involve the physical appropriation of private property. Here, the relevant question to consider is whether Powell is entitled to compensation for access damages to his remaining property where there was physical appropriation of land by SCDOT.

The factual scenario presented here is similar to that in *South Carolina State Highway Department v. Carodale Associates*, 268 S.C. 556, 235 S.E.2d 127 (1977). In *Carodale*, the highway department acquired 0.47 acres of land from the landowner for the construction of an exit ramp off Interstate 77 in Richland County. 268 S.C. at 560, 235 S.E.2d at 128. Part of the project also involved the relocation of part of Highway 1 upon which the landowner's property abutted. *Id.* The property was afforded access to the relocated Highway 1 by the construction of a connecting street. *Id.* The supreme court reversed the award of damages to the landowner's remaining land attributable to the diversion of traffic previously passing its property. *Id.* at 564, 235 S.E.2d at 130. The court declared the State is under no duty to maintain a minimum level of traffic flow. *Id.* at 561, 235 S.E.2d at 128. Further, the *Carodale* court held

> [c]losing a street inherently produces a diversion of traffic and loss of frontage on a viable traffic artery. However, these repercussions are not compensable elements of damage. Succinctly, the restriction of ingress or egress to and from one's property is the right which must be compensated if infringed when a highway is closed by condemnation.

*Id.* at 561, 235 S.E.2d at 129.

■ Viewing the evidence in the light most favorable to Powell, we hold the circuit court did not err in finding any

diminution in value of Powell's property as a result of the change in road access is not compensable. While the circuit court's reliance on *Hardin* was error, pursuant to *Carodale,* a landowner has no vested rights in the continuance of a public highway and in the continuation of maintenance of traffic flow past his property. Therefore, any damage to the remainder of Powell's property as a result of the closure of the intersection of Emory Road and Highway 17 is not compensable. Moreover, we note Powell has not lost his right of ingress or egress to and from his property. Powell had access to Old Socastee Highway and Emory Road prior to the road project and will continue to have access to Old Socastee Highway and Emory Road following the completion of road project.

## II. *Wilson*

The circuit court found Powell's property was taken for the purpose of rounding the intersection of Emory Road and Old Socastee Highway, and SCDOT could have eliminated the intersection of Emory Road and Highway 17 without taking Powell's property. On appeal, Powell asserts this finding is not supported by any evidence in the record. Powell argues this finding by the court created an inference that could erroneously distinguish the closure of the intersection and the creation of the Old Socastee Highway cul-de-sac from the highway project for which the present action was filed. Relying on *South Carolina State Highway Department v. Wilson,* 254 S.C. 360, 175 S.E.2d 391 (1970), Powell asserts SCDOT's condemnation of a portion of his property was part of its overall road project and he is entitled to recover access damages to his remaining property.

In *Wilson,* the highway department took a portion of Wilson's property in order to align a county road running alongside her property with U.S. 15 which her property abutted. 254 S.C. at 363, 175 S.E.2d at 393. Concurrently, the department constructed a raised concrete median in the center of U.S. 15 eliminating her ability to make left turns onto U.S. 15 from her property. *Id.* at 363–64, 175 S.E.2d 391. The supreme court found that "[w]hile the construction of a median, with nothing more, may very well be an exercise of the police power with no resulting compensable damage to an abutting property owner, in the instant case the proposed

median is only an incidental part of the overall Department plans and contemplated construction." *Id.* at 368, 175 S.E.2d at 396. The court held

> [b]ut for such overall construction and relocation, and condemnation under the power of eminent domain for such purposes, there would have been no median and, of course, no damage to the abutting landowner. It logically follows, we think that any damage attributable to the planned median is an incidental result of the exercise of the power of eminent domain....

*Id.* at 369, 175 S.E.2d at 396.

SCDOT argues *Wilson* represents a close factual case between acts of eminent domain and police power actions for which no compensation is due. It contends the federal courts have formalized a three part rule to distinguish damages resulting from a taking and damages resulting from concurrent police power acts in the same project. The "*Campbell* rule," SCDOT asserts, is contained in three cases: *Campbell v. United States,* 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328 (1924); *West Virginia Pulp & Paper Co. v. United States,* 200 F.2d 100 (4th Cir.1952); and *United States v. Pope & Talbot, Inc.,* 293 F.2d 822 (9th Cir.1961).

In *Campbell,* the United States condemned 1.81 acres of Campbell's land along with 1,300 acres owned by other landowners to construct a nitrate plant. 266 U.S. at 369, 45 S.Ct. 115. Campbell appealed the refusal of the district court to award him any damages for diminution in value to his remaining land. *Id.* at 369–70, 45 S.Ct. 115. The government did not propose to use Campbell's land for industrial purposes. Rather, the plant would be physically located on land taken from the other landowners. The Supreme Court held that the proposed use of land by the government taken from others did not constitute a taking of Campbell's property. 266 U.S. at 371, 45 S.Ct. 115. It noted that, if the neighboring landowners had put their land to the identical use that the government proposed, Campbell would have no right to prevent it. *Id.* at 371–72, 45 S.Ct. 115. In summary, the court stated,

> [t]he rule supported by better reason and the weight of authority is that the just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for

public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking.

*Id.* at 372, 45 S.Ct. 115.

The Fourth Circuit in *West Virginia Pulp & Paper* distinguished *Campbell* and awarded compensation for damages to the remainder of the condemnee's property for the diminution in value to two other contiguous tracts owned by the condemnee. 200 F.2d at 103. The court noted that just compensation "includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." *Id.* at 102 (quoting *United States v. Grizzard,* 219 U.S. 180, 183, 31 S.Ct. 162, 55 L.Ed. 165 (1911)).

The Ninth Circuit in *Pope & Talbot,* established a corollary rule to *Campbell.* There, the United States had taken part of Pope & Talbot's land and the land of other owners for a dam project. 293 F.2d at 823. The land taken from Pope & Talbot was flooded along with the other lands. *Id.* In addition, the remaining Pope & Talbot land suffered a loss of accessibility due to having to drive around the lake instead of straight across its bed. *Id.* at 823–24. The Court held three elements are necessary to negate the application of *Campbell:* indispensability, substantiality, and inseparability. *Id.* at 825. The Court found (1) the land taken from the condemnee landowner was indispensable to the dam project; (2) the land taken constituted a substantial part of the tract devoted to the project; and (3) the damages resulting to the land not taken from the use of the land taken were inseparable from the damages to the land not taken flowing from the condemnor government's use of its adjoining land in the dam project. *Id.*

■ We agree with SCDOT that it could have eliminated the intersection without taking part of Powell's property. Powell's property was taken for the purpose of rounding the intersection of Emory Road and Old Socastee Highway, not for the Highway 17 intersection closure. While the intersection closure and the taking of Powell's property were part of the same SCDOT highway improvement project, the relevant question to consider is whether the taking of Powell's property

was necessary for the intersection closure. In light of the cases discussed above, we find the taking of Powell's property was only an incidental result of the closure and was not indispensable to and inseparable from the overall project. We further hold the taking of Powell's property was not a substantial part of the overall road project.

## CONCLUSION

We affirm the trial court's grant of SCDOT's motion for partial summary judgment.

FEW, C.J., and THOMAS, J., concur.