JUSTICE HEARN :
**207 In this case we review the propriety of a grant of partial summary judgment in a condemnation action. The court of appeals affirmed the circuit court's ruling that the landowner, David Powell, was not entitled to compensation for any diminution in value of his remaining property due to the rerouting of a major highway which previously was easily accessible from his property. S.C. Dep't of Transp. v. Powell , 415 S.C. 299, 781 S.E.2d 726 (Ct. App. 2015). We reverse and remand for a jury trial.[1]
*434 **208 FACTUAL/PROCEDURAL BACKGROUND
South Carolina Department of Transportation (SCDOT) condemned a portion of Powell's 2.5 acre property in connection with its upgrade to U.S. Highway 17 Bypass (the Bypass) near the Backgate area of Myrtle Beach. His unimproved parcel, located on the corner of Emory Road and Old Socastee Highway, was originally separated from the Bypass by a power line easement and a frontage road; access to that major thoroughfare was via Emory Road, which intersected with the Bypass. Because Powell's property was zoned "highly commercial," his easy access to the Bypass significantly enhanced its value.
To improve traffic flow in the area, SCDOT converted the Bypass into a controlled access highway whereby entrance and exit ramps provided the only access to motorists. These ramps alleviated the need for several intersections, including the intersection of Emory Road and the Bypass (the Intersection), which SCDOT subsequently closed. To facilitate the closure of the Intersection, SCDOT filed a condemnation notice in August of 2010, informing Powell of its plan to acquire 0.183 acres of his property to reroute the abutting road.
SCDOT's expert appraiser, Corbin Haskell, authored three reports, each estimating Powell's loss between $68,000 and $71,000. Rather than accepting SCDOT's offer of compensation, Powell demanded a jury trial pursuant to Section 28-2-310 of the South Carolina Code (2007). A few days before the commencement of trial, SCDOT informed Powell's attorney that the construction plans had changed, with SCDOT deciding to eliminate the frontage road and turn it into a cul-de-sac. As a result, SCDOT moved for a continuance, allowing Haskell time to draft a fourth report that accounted for the cul-de-sac. According to the new construction plan, access from the Bypass to Powell's property would be substantially restricted. Travelers on the Bypass could reach Powell's property via the **209 Farrow Parkway exit south of the property and travel north for about one mile, or they could exit one mile north of Powell's property and travel south, a distance of 2.24 miles for northbound travelers and 1.25 miles for southbound travelers.
In Haskell's fourth report, he appraised the 0.183 acres at $72,000; however, he opined the closure of the Intersection and the addition of the cul-de-sac would cause a fifty percent diminution in value to the remaining property. He calculated this substantial loss in value to the remainder at $445,000, bringing the total projected compensation to $517,000. When Haskell submitted the report to SCDOT, counsel for SCDOT informed him that Powell was not entitled to compensation for the loss of indirect access to the Bypass. As a result, SCDOT sought to withdraw his fourth report and replace it with a fifth appraisal, correcting what it viewed as compensation for a loss not cognizable under the law. Thereafter, following the instructions from SCDOT's attorney, Haskell revised his figure to $72,000 and issued his fifth report, returning to his original finding that Powell only was entitled to compensation for the loss of 0.183 acres. SCDOT then filed a motion in limine to exclude Haskell's report which estimated compensation at $517,000. With the parties' consent, the circuit court converted the motion in limine into a motion for partial summary judgment so as to permit an immediate appeal, and ruled that under Hardin ,[2] the loss of indirect access to the Bypass was not compensable even though the court acknowledged the remainder of Powell's property would suffer a diminution in value.
The court of appeals affirmed, holding that although the circuit court erred in its application of Hardin , it nevertheless reached the proper conclusion that the loss of indirect access to the Bypass was not compensable. Powell , 415 S.C. at 306-07, 781 S.E.2d at 730.
*435 Specifically, the court of appeals relied on South Carolina State Highway Department v. Carodale Associates , 268 S.C. 556, 235 S.E.2d 127 (1977), where this Court held a landowner could recover for damages derived from the physical appropriation of his property, but he could not recover for the diversion of traffic flow as a result of SCDOT's decision to reconfigure an abutting road under the **210 state's police powers. Additionally, the court of appeals distinguished South Carolina State Highway Department v. Wilson , 254 S.C. 360, 175 S.E.2d 391 (1970), where this Court held the landowner could not only recover for the direct taking, but also for loss of access when SCDOT blocked off a median, under the rationale that but for the direct taking, no loss of access to the abutting roadway would have occurred. The court of appeals ultimately concluded this case aligned more with Carodale than with Wilson because SCDOT's decision to close the Intersection was independent, and not incidental, to its eminent domain power. Powell , 415 S.C. at 310, 781 S.E.2d at 731. Finding that South Carolina Code Section 28-2-370 (2007) permits the consideration of any diminution in the value when determining just compensation for a taking, we now reverse for a jury to determine the amount of damages Powell is entitled to receive from SCDOT.
STANDARD OF REVIEW
An appellate court reviews a motion for summary judgment under the same lens employed by the circuit court whereby all facts are viewed in favor of the nonmoving party. Carolina Chloride, Inc. v. S.C. Dep't of Transp. , 391 S.C. 429, 434, 706 S.E.2d 501, 504 (2011). Summary judgment should not be granted if further development of the facts would assist in the application of the law. Mosteller v. Cty. of Lexington , 336 S.C. 360, 362, 520 S.E.2d 620, 621 (1999). The interpretation of a statute is a question of law reviewed de novo. Town of Summerville v. City of N. Charleston , 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008).
ANALYSIS
We begin our analysis with the South Carolina Constitution, which states, "[P]rivate property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made for the property." S.C. Const. art. I, § 13. Prior to the adoption of our state constitution, the State exercised the power of eminent domain by taking private property without compensating its owner. S.C. State Highway Dep't v. Miller , 237 S.C. 386, 390, 117 S.E.2d 561, 562 (1960). In **211 Section 28-2-370 of the South Carolina Code (2007), the General Assembly established how just compensation should be ascertained in an eminent domain proceeding: "In determining just compensation, only the value of the property to be taken, any diminution in the value of the landowner's remaining property, and any benefits as provided in Section 28-2-360 may be considered." Powell asserts the court of appeals erred in upholding the circuit court's order for summary judgment because under the plain language of this statute, he is entitled to any diminution in value to the remaining property as a result of the taking. Powell's argument is that because SCDOT acquired a portion of his property through condemnation-admittedly a taking-our analysis is different than that employed in determining whether a taking has occurred. See Hilton Head Auto., LLC v. S.C. Dep't of Transp. , 394 S.C. 27, 33, 714 S.E.2d 308, 311 (2011) ("[W]e find no taking has occurred, and therefore, we do not reach the issue of damages. Wilson does not apply."). Because our focus should be only on the damages that arise from the taking, Powell argues that section 28-2-370 allows him to present to the jury evidence of the diminution in value of the remainder of his property.
SCDOT, on the other hand, urges a more restrictive interpretation of the just compensation statute whereby only damages resulting from the actual taking of the 0.183 acres are recoverable. To support its reading of section 28-2-370, SCDOT points to this Court's construction of a prior statute[3] governing *436 compensation for takings. S.C. State Highway Dep't v. Bolt , 242 S.C. 411, 417, 131 S.E.2d 264, 267 (1963) ("[Damages to the remainder] which are the direct and proximate consequence of the acquisition of the right of way [are compensable]. In other words, as a general rule, special damages include all injuries or damages which cause a diminution in the value of the remaining property."). Essentially, SCDOT contends the analysis of whether a taking has occurred must be conducted with respect to each action that produces a diminution of value in the remaining property. Under SCDOT's theory, there are two distinct actions here: (1) the physical **212 appropriation of 0.183 acres, and (2) the closure of the Intersection and the creation of the cul-de-sac. According to SCDOT, while the first act constitutes a taking, the second does not, and therefore, the statute governing compensation applies only to the first action.
Finally, SCDOT argues that under this Court's jurisprudence, whether a property owner is entitled to compensation for loss of indirect access depends on whether the condemnor exercises its police powers-where no compensation is due-versus its eminent domain powers-where compensation is required. SCDOT relies on Carodale and Hardin to support its assertion that Powell is not entitled to compensation for the closure of a nearby intersection, which is simply an exercise of the State's police powers.
We disagree with SCDOT that inverse condemnation cases, which are concerned with the threshold question of whether a taking has occurred, preclude recovery to Powell. Here, a taking has indisputably occurred and the jury should determine whether the closure of the Intersection proximately caused a diminution in the value to the remainder of Powell's property. Thus, as the court of appeals properly held, the principles enunciated in Hardin are not applicable.
Here, there is no question that a taking has occurred-SCDOT acquired 0.183 acres of Powell's property as part of its overall road improvement project. Accordingly, rather than the jurisprudence governing whether a change in roadway access constitutes a taking, section 28-2-370 controls, and the lone question is the amount of compensation which may be awarded to Powell. That statute explicitly authorizes compensation for "any diminution in value to the remaining property," and we see no reason why a jury should not decide the extent of Powell's damages.
We believe Wilson supports our view that whether Powell is entitled to recover damages related to the closure of the Intersection and the installation of the cul-de-sac is a jury question. There, the Court upheld a jury verdict in favor of a landowner over the Highway Department's objection to evidence of a diminution in property value caused by the installation of a median which prevented left turns onto a highway abutting Wilson's property.
**213 Wilson , 254 S.C. at 368, 175 S.E.2d at 396. As part of that project, the Highway Department acquired a small portion of Wilson's property and relocated a county road over the property, thus resulting in a direct taking. Id. at 364, 175 S.E.2d at 393. In addition to the county road, another highway abutted his property, which had previously allowed Wilson to turn left from his property onto the highway. Id. However, as part of the plan to reconfigure the county road, the Highway Department constructed a median on the highway, thereby preventing Wilson from accessing the highway except from the relocated county road. Id. An expert testified Wilson's remaining property value was significantly impaired as a result of this loss of access, and the Highway Department objected, contending only the actual acquisition of his property for the county road was compensable. Id. at 365, 175 S.E.2d at 394. Additionally, the Highway Department requested the jury be instructed that evidence related to the construction of the median could not be considered in awarding compensation for the diminution in value to the remainder of his property. Id. However, in affirming the trial court's decision to reject the charge, this Court focused on the fact that but for the acquisition of the landowner's property used for the reconfiguration of the county road, the Highway Department would not have *437 installed a median. Id. at 369, 175 S.E.2d at 396. The Court acknowledged,
While the construction of a median, with nothing more, may very well be an exercise of the police power with no resulting compensable damage to an abutting property owner, in the instant case the proposed median is only an incidental part of the overall Department plans and contemplated construction. There is no suggestion of the need for, or the contemplated construction of, a median except as an incidental part of the major relocation and construction plans of the Department. But for such overall construction and relocation, and condemnation under the power of eminent domain for such purposes, there would have been no median and, of course, no damage to the abutting landowner. It logically follows, we think that any damage attributable to the planned median is an incidental result of the exercise of the power of eminent domain.
Id. at 368-69, 175 S.E.2d at 396. Thus, because the direct taking of the landowner's property occurred under the Highway **214 Department's power of eminent domain-requiring compensation to the property owner-the Court held the closure of the median was an incidental result and therefore, the landowner could recover compensation as part of the remaining property's fair market value despite the general rule that the mere closure of a road or lane does not constitute an inverse condemnation. Id.
However, SCDOT argues that Carodale supports its position that Powell is not entitled to recover for the diminution in value of his property because of the loss of easy access to the Bypass. In Carodale , a portion of land was acquired to construct an exit ramp off I-77 and the reconfiguration of U.S. Highway 1, which fronted the landowner's property. Carodale , 268 S.C. at 560, 235 S.E.2d at 128. SCDOT objected to testimony about the loss of frontage on U.S. Highway 1, arguing that it was irrelevant because only the property taken to build the exit ramp was compensable. Id. While the Court agreed with SCDOT, it recognized, "[T]he restriction of ingress or egress to and from one's property is the right which must be compensated if infringed when a highway is closed by condemnation." Id. at 561, 235 S.E.2d at 129.
Although the court of appeals held Carodale limited Powell's right to compensation, that case addressed damages stemming from loss of traffic flow , rather than those flowing from loss of access as involved in Wilson . We find Powell's case more analogous to Wilson because he claims the closure of the Intersection and the termination of the frontage road into a cul-de-sac impaired his access to the Bypass which, according to SCDOT's own appraiser, resulted in a fifty percent reduction in value to his nearly $1 million piece of property.[4]
**215 Furthermore, Wilson recognized *438 that SCDOT cannot escape its constitutional and statutory obligations to tender just compensation for acquiring Powell's property under the power of eminent domain, and any acts carried out under its police power which are incidental to its eminent domain authority are compensable.
The record plainly shows each time SCDOT furnished construction plans to Powell-including the initial condemnation notice-the closure of the Intersection and the 0.183 acre acquisition were indicated on the same sketch. Additionally, when SCDOT changed the plans to terminate the frontage road into a cul-de-sac, it was indicated on the overall project plans. Moreover, SCDOT's counsel's request for a continuance on the eve of trial to permit a new appraisal accounting for the revised construction plans lends support to Powell's contention that there was a clear connection between the taking of his property and the closure of the Intersection and construction of the cul-de-sac. Consistent with Wilson , the closure of the Intersection, by itself, would likely result in no compensation to Powell because it would not constitute a taking under Hardin and its progeny; however, in this case, SCDOT acquired **216 Powell's property as part of the overall project, as noted by the condemnation notice. Despite this, the court of appeals ruled as a matter of law that SCDOT could have closed the road without taking Powell's property. This was error because what is important to our analysis is what SCDOT actually did in this case, not what it could have done. The record contains evidence the condemnation of Powell's property, the closure of the intersection, and the curving of the frontage road over the condemned parcel were all integrally connected components of the project, creating a material issue of fact as to which of these acts is a direct and proximate cause of the taking, thus rendering summary judgment improper. Employing the clear language of our just compensation statute, we hold that a jury should be permitted to hear evidence on the diminution in value to the remaining property.
CONCLUSION
For the foregoing reasons, we hold the court of appeals erred in upholding partial summary judgment in favor of SCDOT. Accordingly, we REVERSE and REMAND to the circuit court for a jury trial to determine the just compensation to be awarded to Powell.
Acting Justices Doyet A. Early, III and Alison Renee Lee, concur. JAMES, J., dissenting in a separate opinion in which KITTREDGE, J., concurs.
JUSTICE JAMES :
I respectfully dissent. Under the facts of this case, Powell is not entitled to remainder damages arising from the closure of the intersection of Emory Road and the Highway 17 Bypass and is not entitled to remainder damages arising from the creation of the Old Socastee Highway cul-de-sac. The majority has fundamentally altered the law of eminent domain in South Carolina in concluding such damages are recoverable under the facts of this case. As held by the court of appeals, our decision in South Carolina State Highway Department v. Carodale Associates[5] is controlling. Our holding in **217 South Carolina State Highway Department v. Wilson ,[6] relied upon by the majority, is easily distinguished from the facts of this case. While I agree with the result reached by the court of appeals, I would modify it slightly to affirm the circuit court solely pursuant to Carodale and other authorities cited herein.[7]
I. Facts
An understanding of the facts of this case is crucial to the correct application of our *439 statutory and case law. For ease of reference, I have attached a copy of the Horry County Tax Map depicting the layout of Powell's property and surrounding roadways prior to the undertaking of the project. The Tax Map shows Emory Road where it formerly intersected with the Highway 17 Bypass several hundred feet away from Powell's property. That intersection was closed as part of the highway improvement project at issue in this case. The .183 acre sliver taken from Powell's 2.5 acre parcel was at the corner where Emory Road meets Old Socastee Highway, as shown on the Tax Map.
I have also attached a Google Map[8] showing that the result of the taking of the .183 acres was the creation of a slight curve at the formerly angled intersection of Emory Road and Old Socastee Highway. The Google Map also shows where Old Socastee Highway now terminates into a cul-de-sac.
There is no question that SCDOT physically took .183 acres of Powell's property. There is no question that the Emory Road-Highway 17 Bypass intersection was closed. Before this project was undertaken, Powell's property did not abut that intersection and did not abut the Highway 17 Bypass; the significance of these two facts is discussed below. Several hundred feet from Powell's property, Old Socastee Highway has been terminated into a cul-de-sac. Before this project was **218 undertaken, Powell's property did not abut the portion of Old Socastee Highway that no longer exists. Access to Powell's property to and from the Highway 17 Bypass is indirect, just as it was before the project was undertaken. It now takes longer to get to and from the Bypass. Powell's property still abuts Emory Road and Old Socastee Highway exactly as it did before the project was undertaken.
II. The Haskell Appraisals
I will first address the five appraisals submitted by Corbin Haskell, SCDOT's expert real estate appraiser. In reaching his various conclusions, Haskell considered section 28-2-370 of the South Carolina Code (2007), which provides that in condemnation cases of this kind, "In determining just compensation, only the value of the property to be taken, any diminution in the value of the landowner's remaining property, and any benefits as provided in § 28-2-360 may be considered."
From April 2010 through June 2011, Haskell authored three separate appraisal reports detailing his opinion of Powell's loss arising from the taking of the .183 acres; these three valuations of loss ranged from $68,000 to $71,000 and were confined solely to the physical taking of .183 acres. In other words, none of these appraisals included any damage to the remainder of Powell's property.
When Haskell completed these first three appraisals (again, none of which included damage to the remainder), he was aware that SCDOT's plans reflected the closure of the intersection of Emory Road and the Highway 17 Bypass. After the parties completed discovery, engaged in mediation, and prepared for trial, SCDOT realized it had not provided Powell's counsel with plans showing that Old Socastee Highway would be terminated into the aforementioned cul-de-sac several hundred feet from Powell's property. Haskell prepared yet another appraisal, his fourth overall and the first of two appraisals dated March 14, 2013.
In this fourth appraisal, Haskell included a loss from the physical taking totaling $72,000 and also included, for the first time, damage to the remainder totaling $445,000, for a total loss of $517,000. Haskell based his opinion of damage to the remainder upon what he termed "reduced access" to the **219 Highway 17 Bypass arising from the closure of the Emory Road-Highway 17 Bypass intersection and from the creation of the cul-de-sac. This appraisal is at the center of the dispute between the parties on appeal.
SCDOT's counsel disclosed Haskell's fourth appraisal to Powell. SCDOT's counsel also notified Haskell that remainder damages for the closure of the intersection and the creation of the cul-de-sac were not recoverable *440 under South Carolina law. As I will discuss below, this is a correct application of the law under the facts of this case. Haskell then submitted his second March 14, 2013 appraisal (overall, his fifth and final appraisal), in which he removed the remainder damages and opined that the sole damage Powell sustained was in the amount of $72,000, that being solely for the physical take of the .183 acres.
The majority attaches much significance to Haskell's inclusion of remainder damages in his fourth appraisal. However, Haskell's inclusion of a category of perceived damages in this appraisal does not make those perceived damages recoverable under our law. A real estate appraiser, even one retained by the condemning authority, does not dictate what particulars of damage are recoverable in a condemnation action. The law dictates what particulars of damage are recoverable. Under the facts of this case, the law does not permit Powell to recover damage to the remainder as opined by Haskell in his fourth appraisal.
III. Applicable Law and Analysis
The majority's analysis of applicable South Carolina case law and its relationship to our condemnation statute and the facts of this case is flawed. I agree with the court of appeals that Carodale controls our answer to the question of whether Powell is entitled to recover remainder damages for the closing of the intersection and the creation of the cul-de-sac.
Section 28-2-370 of the South Carolina Code (2007) provides:
In determining just compensation, only the value of the property to be taken, any diminution in the value of the landowner's remaining property, and any benefits as provided in § 28-2-360 may be considered.
**220 Powell claims the increased remoteness of his property and the increased complexity of access to his property resulting from the road project are appropriate for the jury's consideration in the determination of just compensation. In particular, Powell claims that since his property is zoned "highway commercial," the question of ease of access to his property is proper for consideration. He claims that pursuant to section 28-2-370, we must permit the introduction of all evidence of damage he might have sustained as a result of the road project. Powell argues that had the General Assembly intended to prevent consideration of this "access evidence" as part of the quest in determining damage to his remaining property, it could have included language in the Eminent Domain Procedure Act[9] limiting the consideration of damage to the remainder to the extent urged by SCDOT and held by the court of appeals. Powell is simply incorrect, at least under the facts of this case.
We have long-recognized the distinction between a governmental entity's valid exercise of police powers and its exercise of eminent domain. As we noted in Wilson , "just compensation is required in the case of the exercise of eminent domain but not for the loss by the property owner which results from the constitutional exercise of the police power." 254 S.C. at 365, 175 S.E.2d at 394 (citing Richards v. City of Columbia , 227 S.C. 538, 88 S.E.2d 683 (1955) ; Edens v. City of Columbia , 228 S.C. 563, 91 S.E.2d 280 (1956) ).
There is no dispute that redesigning highways and redirecting traffic are valid exercises of police power. SCDOT claims that any diminution in value to the remainder of Powell's property after the closure of the Emory Road-Highway 17 Bypass intersection and the creation of the cul-de-sac on Old Socastee Highway (both several hundred feet away from Powell's property) is a result of its exercise of this police power, not a result of the taking of the .183 acres, and is thus not compensable. SCDOT is correct.
I will now review our holdings in Carodale and Wilson and explain their application, or lack thereof, to the instant case. The majority holds Wilson guides our analysis of compensability under section 28-2-370. I disagree. Once the distinguishing **221 facts in these two cases are understood, it becomes clear that our holding in Carodale should control our analysis in the instant case. *441 A. Carodale
In Carodale , the highway department acquired .47 acres from the landowner for the construction of an exit ramp off Interstate 77 in Richland County. 268 S.C. at 560, 235 S.E.2d at 128. The landowner's property abutted U.S. Highway 1, but Highway 1 was relocated as part of the overall project. Id. The landowner's property regained its connection to Highway 1 by the construction of a new street connecting the property to Highway 1. Id. The landowner received a jury verdict for the physical taking of the .47 acres and for damage to the remainder of its land attributable to the diversion of traffic that previously passed its property on Highway 1. We reversed the award of damages to the remainder. Id. at 564, 235 S.E.2d at 130. We held:
The landowner has no property right in the continuation or maintenance of the flow of traffic past its property. Traffic on the highway, to which they have access, is subject to the same police power regulations as every other member of the traveling public. Re-routing and diversion of traffic are police power regulations.
Id. at 561, 235 S.E.2d at 129. Here, Powell attempts to present essentially the same remainder damage claim we rejected in Carodale . The evidence clearly establishes Powell's property continues to abut both Emory Road and Old Socastee Highway exactly as it did before the taking of .183 acres of his property. Carodale simply does not permit the recovery of remainder damages flowing from the closing of the Highway 17 Bypass-Emory Road intersection and the creation of the cul-de-sac.
The closing of the Highway 17 Bypass-Emory Road intersection and the creation of the cul-de-sac on Old Socastee Highway will cause a diversion in traffic for Powell, both to and from the Highway 17 Bypass. However, as we noted in Carodale :
Closing a street inherently produces a diversion of traffic and loss of frontage on a viable traffic artery. However, these repercussions are not compensable elements of dam age **222 . Succinctly, the restriction of ingress and egress to and from one's property is the right which must be compensated if infringed when a highway is closed by condemnation.
268 S.C. at 561, 235 S.E.2d at 129 (emphasis added) (citing S.C. State Highway Dep't v. Wilson , 254 S.C. 360, 175 S.E.2d 391 (1970) ) (other citations omitted). Even though the closure of the Emory Road-Highway 17 Bypass intersection and the creation of the cul-de-sac on Old Socastee Highway will cause a diversion of traffic, Carodale requires us to hold this repercussion is not compensable, as Powell has the exact same access to and from his property by way of the same roads his property abutted before the project began.
B. Wilson
The majority accepts Powell's argument that Wilson is controlling. I respectfully submit this is error, as Wilson is fundamentally distinguishable from Carodale and from the instant case. In Wilson , the highway department took a piece of Wilson's property in order to align a Lee County road running alongside Wilson's property and connecting with U.S. Highway 15. 254 S.C. at 363, 175 S.E.2d at 393. Wilson's property abutted Highway 15. Id. During the project, the highway department also constructed a median in the center of Highway 15 running the length of Wilson's property, thereby eliminating Wilson's ability to make left turns from her property onto Highway 15. Id. at 363-64, 175 S.E.2d at 393. The highway department objected to evidence offered by Wilson to this effect, arguing that only the actual physical taking of Wilson's property was compensable. Id. at 365, 175 S.E.2d at 394. We disagreed, noting that "[w]hile the construction of a median, with nothing more, may very well be an exercise of the police power with no resulting compensable damage to an abutting property owner ," the proposed median was a part of the highway department's overall plans and contemplated construction. Id. at 368, 175 S.E.2d at 396 (emphasis added). We further held:
But for such overall construction and relocation, and condemnation under the power of eminent domain for such purposes, there would have been no median and, of course, no damage to the abutting landowner . It logically follows, we think that *442 any damage attributable to the planned **223 median is an incidental result of the exercise of the power of eminent domain....
Id . at 369, 175 S.E.2d at 396 (emphasis added). In Wilson , one key to our analysis was that prior to condemnation, the landowner's tract abutted Highway 15 for a distance of 670 feet, and that as a result of the condemnation, this frontage was reduced to 330 feet. Id. at 368, 175 S.E.2d at 395. We also emphasized that the overall project severed the landowner's property into two tracts and that with respect to the smaller southern tract, there was no longer any access to either the northbound or southbound lanes of Highway 15 except via the county road; we further noted there was no access from the northern tract to the northbound lanes of Highway 15 except via the county road. Id. at 368, 175 S.E.2d at 395-96. The deprivation and diminution of access to Highway 15 directly to and from Wilson's property, coupled with the physical taking of a portion of Wilson's property, held the key to this deprivation and diminution of access being compensable.
In Wilson , we cited South Carolina State Highway Department v. Allison[10] in support of our conclusion. In Allison , we held:
[A]n abutting property owner has a right of access over a street adjacent to his property , as an appurtenance thereto. And, that an obstruction that materially injures or deprives the abutting property owner of ingress or egress to and from his property is a 'taking' of the property, for which recovery may be had. The fact that other means of access to the property are available affects merely the amount of damages, and not the right of recovery.
246 S.C. at 393, 143 S.E.2d at 802 (emphasis added). Our reliance upon Allison demonstrates that our holding of compensability in Wilson was based upon (1) the physical taking of property and (2) the creation of an obstruction (the median directly in front of the remainder of Wilson's property) that materially diminished or deprived Wilson of ingress to and from the road adjacent to her property. Here, Powell has the same ingress to and from his property that he did before the project was undertaken. His "right of access over [the streets] adjacent to his property" has not been diminished.
**224 Even more evidence that our holding in Wilson applies only to abutting property owners is found in our rejection of "considerable authority from other jurisdictions to the effect that, even though there be other taking or damaging of the property of an abutting landowner, under the power of eminent domain, the landowner is still not entitled to recover any damage resulting from the concomitant construction of a median or other traffic control device." Wilson , 254 S.C. at 366, 175 S.E.2d at 394 (emphasis added) (citing Barnes v. N.C. State Highway Comm'n , 257 N.C. 507, 126 S.E.2d 732 (N.C. 1962) ; C.C. Marvel, Annotation, Power to Restrict or Interfere with Access of Abutter by Traffic Regulations , 73 A.L.R.2d 689 (1960) ). The key to our rejection of this "considerable authority" was our recognition that property owners who suffer a physical taking and who suffer significant restriction of access to roads which their property abuts should be permitted to recover damages resulting from such restriction. Wilson fell into this category of landowner. Powell does not.
The majority finds "Powell's case more analogous to Wilson because [Powell] claims the closure of the Intersection and the termination of the frontage road into a cul-de-sac impaired his access to the Bypass which, according to SCDOT's own appraiser, resulted in a fifty percent reduction in value to [the remainder of Powell's property]."[11] I disagree. Impairment of access to a road upon which Powell's property does not abut is not compensable under Wilson . Regardless of how Powell and the majority attempt to frame the issue, this case is not a case of deprivation of ingress and egress to and from a road which Powell's property formerly abutted. To repeat, Wilson is limited to instances in which a landowner's access to a road abutting his property has been diminished.
*443 As noted, Powell's property is several hundred feet away from the Bypass and the now-closed intersection and has never abutted either. Powell has exactly the same access to his abutting roads that he did before the taking of his .183 acres. Thus, no part of the Wilson analysis applies to the facts of this case.
**225 Continuing with its insistence that Wilson applies, the majority writes:
Consistent with Wilson , the closure of the [Highway 17 Bypass-Emory Road] Intersection, by itself, would likely result in no compensation to Powell because it would not constitute a taking under Hardin and its progeny; however, in this case, SCDOT acquired Powell's property as part of the overall project, as noted by the condemnation notice. Despite this, the court of appeals ruled as a matter of law that SCDOT could have closed the road without taking Powell's property. This was error because what is important to our analysis is what SCDOT actually did in this case, not what it could have done. The record contains evidence the condemnation of Powell's property, the closure of the intersection, and the curving of the frontage road over the condemned parcel were all integrally connected components of the project....
This reasoning elevates form over substance and ignores our holding in Carodale , decided seven years after Wilson . If the majority's rationale is carried to its logical conclusion, SCDOT could have concocted a noncompensable scenario in which the same .183 acres was physically taken, the same gentle curve was routed, the same intersection was closed, and the same cul-de-sac was created. Pursuant to the majority's logic, Powell could not recover as long as SCDOT creatively (but inefficiently) planned and constructed the very same improvements piecemeal instead of in a fashion that efficiently deployed what the majority correctly terms "integrally connected components" of one project. Such an approach to highway development projects would reward inefficiency, and such an approach would invite confusion in the application of the majority's holding in this very case.
The majority emphasizes that every time "SCDOT furnished construction plans to Powell-including the initial condemnation notice-the closure of the Intersection and the .183 acre acquisition were indicated on the same sketch. Additionally, when SCDOT changed the plans to terminate the frontage road into a cul-de-sac, it was indicated on the overall project plans." It matters not to a proper analysis of compensability that SCDOT was diligent in preparing and amending construction plans that depicted the project as a whole. It would hardly **226 be practical for SCDOT to design a highway project and prepare construction plans on separate sketches and distribute them separately, unless the overall plans had to be changed for unanticipated reasons. The majority's reasoning would allow SCDOT to do just that to thwart the prospect of compensability.
The majority also contends SCDOT's counsel's "request for a continuance on the eve of trial to permit a new appraisal accounting for the revised construction plans lends support to Powell's contention that there was a clear connection between the taking of his property and the closure of the [Highway 17 Bypass-Emory Road] Intersection and construction of the cul-de-sac." I disagree. A lawyer's motivation for requesting a continuance has no bearing upon either a legal or a factual analysis of compensability.
The majority has significantly broadened the scope of recoverable damages in a condemnation case in which (1) property has been physically taken (here, .183 acres) and (2) roads upon which the landowner's property does not abut have been altered or closed. The majority has neutered our holding in Carodale , dramatically expanded the scope of compensability, and added an inverse condemnation flavor to section 28-2-370 that our case law-until now-has refused to allow. In addition, this decision significantly blurs the distinction between a noncompensable exercise of police power and a compensable exercise of eminent domain.
IV. Powell's Remaining Issues
Powell also argues the circuit court and the court of appeals reached conclusions of *444 fact for which no evidence has been adduced. First, he claims there is no evidence in the record allowing the conclusion that his property was taken for the purpose of rounding the intersection of Old Socastee Highway and Emory Road. I disagree. There is no other reasonable conclusion to draw from the evidence. There is no reasonable inference to be derived from the evidence in the record that Powell's property was taken for the purpose of closing the Emory Road-Highway 17 Bypass intersection. Likewise, there is no evidence that would tend to establish that Powell's **227 property was taken for the purpose of creating the cul-de-sac on Old Socastee Highway.
Finally, Powell argues the circuit court never allowed him the opportunity to question appraiser Haskell's qualifications, analysis, or opinions. The record indicates Powell deposed Haskell and had the opportunity to vet his qualifications. In addition, I find it curious that Powell would want to challenge Haskell's qualifications, especially since Powell's primary argument in this appeal necessarily relies upon the supposed validity of Haskell's fourth appraisal, which included a significant sum of damage to the remainder of Powell's property. This argument has no merit.
V. Conclusion
The court of appeals' decision should be affirmed. I would modify the court of appeals' opinion to note that the circuit court's grant of partial summary judgment should be affirmed solely pursuant to Carodale and other authorities cited herein.
KITTREDGE, J., concurs.
Attachment *445 **228 *446 **229 *447 **230 --------

Powell raises three additional issues: (1) whether the court of appeals affirmed factual conclusions not supported in the record, (2) whether the court relied upon an expert that Powell purportedly did not have the opportunity to question, and (3) whether the court of appeals erred by holding Powell was not entitled to recover compensation without first determining whether the diminution in value constituted a material injury. Because we hold Powell is entitled to present evidence of the diminution in value of his remaining property, we decline to reach these issues. State v. Rivera , 402 S.C. 225, 250, 741 S.E.2d 694, 707 (2013) (stating that once an issue is dispositive, an appellate court does not need to address any remaining arguments).

Hardin v. S.C. Dep't of Transp. , 371 S.C. 598, 641 S.E.2d 437 (2007)

Section 33-135 of the 1962 Code states: "In assessing compensation and damages for rights of way, only the actual value of the land to be taken therefor and any special damages resulting therefrom shall be considered."

We find the dissent's narrow interpretation of Wilson misses a critical principle-that is, when determining just compensation, the inquiry extends not just to the value of the land taken, but also to " 'how much has the particular public improvement decreased the fair market value of the property, taking into consideration the use for which the land was taken and all the reasonably probable effects of its devotion to that use .' " Wilson , 254 S.C. at 369, 175 S.E.2d at 396 (quoting S.C. State Highway Dep't v. Bolt , 242 S.C. 411, 131 S.E.2d 264 (1963) (emphasis added) ). Thus, Wilson requires that a court look at the consequential diminution in value to the landowner's property caused by the public improvement and the reasonably probable effects of its use. See S.C. State Highway Dept. v. Touchberry , 248 S.C. 1, 7, 148 S.E.2d 747, 749 (1966) (explaining "the different elements of damage to remaining land recoverable when part of a tract is taken are as numerous as the possible forms of injury"). Our disagreement with the dissent is furthered by our differing views of the scope of section 28-2-370, which by its plain language entitles a landowner to compensation for any diminution in value to the remaining property as a result of the taking. Our holding does not change the threshold question of what constitutes a taking; however, once it is established that a taking has occurred, the unambiguous words of the statute allow a jury to consider whether and to what extent the property's value has been diminished. Effects which may not amount to a taking standing alone may nevertheless be considered when determining just compensation, provided they are a direct and proximate cause of the taking. See id. at 5, 148 S.E.2d at 748-49 ("In other words, he is entitled to full compensation for the taking of his land and all its consequences; and the right to recover for the damage to his remaining land is not based upon the theory that damage to such land constitutes a taking of it, [n]or is there any requirement that the damage be ... such as would be actionable at common law; it is enough that it is a consequence of the taking.") (quoting 18 Am. Jur. 905, Section 265). Applying Wilson's logic to the facts at hand, there is evidence in the record Powell's land was taken in conjunction with closing the Intersection and the installation of the cul-de-sac. Accordingly, he is entitled to have a jury decide the extent of the reasonably probable effects of the taking and the resulting diminution in value.

268 S.C. 556, 235 S.E.2d 127 (1977).

254 S.C. 360, 175 S.E.2d 391 (1970).

I agree with the majority and the court of appeals that Hardin v. South Carolina Department of Transportation , 371 S.C. 598, 641 S.E.2d 437 (2007), does not apply to the facts of this case.

Google Maps, http://maps.google.com (search "Emory Road and Powell Lane, Myrtle Beach, SC 29577").

S.C. Code Ann. §§ 28-2-10 to -510 (2007 & Supp. 2017).

246 S.C. 389, 143 S.E.2d 800 (1965).

Note again the majority's preoccupation with the SCDOT appraiser's inclusion of remainder damage. As noted above, the appraiser's misunderstanding of the law pertaining to recoverable damages is of no benefit to Powell.